COMMERCIAL INSURANCE COMPANY OF NEWARK, NEW JERSEY, Plaintiff,

v.

Frederick GARDNER and Woodrow G. Wilson, Defendants.

Civ. A. No. AC-1075.

United States District Court E. D. South Carolina, Columbia Division.

Sept. 17, 1964.

J. Monroe Fulmer, Columbia, S. C., for plaintiff.

Jack F. McGuinn, Luther M. Lee, Columbia, S. C., for defendants.

HEMPHILL, District Judge.

Complaint seeks relief, by way of declaratory judgment from liability for defendant Gardner, insured, or to defendant Wilson, third party injured in collision with insured. At non-jury hearing before the Court at the July Civil Term, Columbia Division, facts were undisputed leaving legal issues to be determined.

On July 6, 1962 defendant Gardner, patroling as a policeman on duty in the

Eau Claire section of Columbia, South Carolina, was involved in an automobile collision with defendant Wilson who thereafter instituted suit for injuries and damages in the South Carolina State Courts. At the time of the collision Gardner was driving a vehicle owned and furnished to him by the City of Columbia especially for police work: The vehicle was one of six or eight vehicles assigned especially for use in traffic supervision at night or in rainy weather.

At the time Gardner was the owner of two private automobiles, one a 1954 Studebaker. Plaintiff had theretofore issued its automobile insurance policy #AFE–455022 covering the 1954 Studebaker, insuring Gardner from liability arising from the use of the insured vehicle subject to the terms and conditions of the policy, and providing indemnity therefor. Defendant Gardner pleads that he was covered while in the police vehicle and in his second defense alleges knowledge on the part of insurer [1], that therefore no exclusion was in effect[2]; his third defense, that no Federal question was involved, was not pressed at the hearing before the Court. Wilson pled "no conflict" with plaintiff, on information and belief, plead coverage of Gardner at the time of collision. The pleadings effectively presented complete diversification of citizenship between the parties, and that the State Court action involved $35,000.00.

Authority for this action is not controverted. See 28 U.S.C.A. § 2201. Plaintiff can seek remedy under this statute. Jurisdiction has been established otherwise.

The applicable provisions of the policy read as follows:

Part I—LIABILITY

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

1. The policy contract in evidence stated Gardner's occupation as "Policeman— City of Columbia".

2. This was, to all intents and purposes, a plea of coverage by estoppel.

"A. bodily injury, sickness or disease, including death resulting therefrom. * * *

"B. injury to or destruction of property, including loss of use thereof * * *; arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile * * *."

Under Part I—Definition

" 'non-owned automobile' means an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile."

Exclusions—This policy does not apply under Part I:

"(1) to a non-owned automobile while used * * *;

"(2) in any business or occupation of the insured except a private passenger automobile operated or occupied by the named insured or by his private chauffeur or domestic servant, or a trailer used therewith or with an owned automobile."

Plaintiff herein contends that the policy issued by it to its insured, Frederick Gardner, on his personal automobile, does not afford him coverage of liability arising out of the heretofore referred to accident for the following reasons:

1. By definition coverage of a non-owned automobile does not extend to one furnished for "regular use" and this automobile or some automobile or motorcycle was furnished the insured daily; and

(2) A police car cannot be considered a private passenger automobile and since the insured was using it in his business or occupation, it comes within the exclusion set out above.

In the absence of a provision for the extension of coverage of an automobile liability or underwriter policy to automobiles other than these described in the policy, or of specific approval of the change, the insurer does not cover the insured's liability resulting from the use of such other automobiles. Robinson v. Georgia Casualty and Surety Co., 235 S. C. 178, 110 S.E.2d 255 [3]. Neither the pleadings nor testimony present any theory other than that Gardner's private vehicle was named in the policy, the police vehicle was nowhere referred to therein.

The terms of the policy define the "non-owned automobile" the contract covers. The Chief of Police of the City testified that the vehicle driven by Gardner was one of six or eight assigned to traffic. As this automobile was assigned to the police force and Gardner was a member of that force, it follows that the provision did not apply to the car as it was not owned by Gardner but furnished for his regular use in keeping with his duties. This provision of the policy only extended Gardner's insurance coverage to casual driving of automobiles other than his own, and not to the vehicle in question [4]. Voelker v. Travelers Indemnity Co.[5] defines "regular use" to include a truck driven by insured as a member of the National Guard, stating:

"It was the first time that he had operated the specific auto but the entire fleet was subject to his use. * * *. The fact that plaintiff had not previously driven this particular truck is immaterial."

Gardner testified he spent many hours each week in one of the assigned cars.

While we are without precedent in South Carolina, the Fourth Circuit has considered the question of "regular use" at least twice. The first time was in the case of Campbell, et al. v. Aetna Casualty and Surety Company, 4th Circuit, 211 F.2d 732 (1954), wherein a father owned a truck which he used in his occupation and on which he had insurance. The father did not own an automobile, but

3. Citing annotation in 34 A.L.R.2d 938.

4. See 7 Am.Jur.2d §§ 105, 106.

5. 7 Cir., 260 F.2d 275.

his son, who still lived with the family, owned one which the father drove occasionally and which the father was driving at the time of the accident. The father contended that his policy on the truck which contained a "drive other car" provision should cover any liability arising out of the accident. Aetna brought this action for a declaratory judgment on several grounds, one of which was that the son's automobile was excluded from coverage under the exclusion of automobiles furnished for "regular use" to the named insured.

The District Court found that the son's automobile was furnished for "regular use" to the father and was therefore excluded from coverage. In upholding the lower court's decision, the Court, speaking through Circuit Judge Soper, had the following to say about the "drive other automobile" clause excluding automobiles furnished for "regular use":

"The great weight of authority is in accord with the interpretation of this provision by Judge Chesnut in Aler v. Travelers Indemnity Co., D. C.Md., 92 F.Supp. 620, 623, where he said:

" 'This case involves the construction and application of the so-called "drive other automobiles" clause of the present standard automobile liability policy. The general purpose and effect of this provision of the policy is to give coverage to the insured while engaged in the only infrequent or merely casual use of an automobile other than the one described in the policy, but not to cover him against personal liability with respect to his use of another automobile which he frequently uses or has the opportunity to do so. More specifically the evident intention of the limitation with respect to other automobiles is to prevent a situation in which the members of one family or household may have two or more automobiles actually or potentially used interchangeably but with only one particular automobile insured. That this is the general purpose of the provision is well and clearly stated in the annotation on the subject in 173 A.L.R. 901. And see Lumbermens Mutual Cas. Co. v. Pulsifer, D.C.Me., 41 F.Supp. 249; Rodenkirk v. State Farm Mut. Auto Ins. Co., 325 Ill.App. 421, 60 N.E. 269.' "

The question came before the Fourth Circuit again in the case of Pennsylvania Threshermen & Farmer's Mutual Casualty Insurance Company v. Robertson, Robertson and Messer, 4th Circuit, 259 F.2d 389 (1958), when the insured had an accident while driving her husband's car which she had been using for some ten days prior to the accident. She claims that the "drive other car" provision on her automobile should cover and the insurance company defends on the ground, among others, that the car was excluded because it was furnished for "regular use".

In reversing the District Court which had held the insurance company liable under the "temporary substitute" clause, the Court reiterated the position taken in Campbell, et al v. Aetna Casualty and Surety Company, supra:

"We adhere to the view we expressed in Campbell v. Aetna Casualty & Surety Co. [supra], where we quoted the following passage from the opinion of Judge Chesnut in Aler v. Travelers Indemnity Co. [supra]: (See quotation set out on preceding page)."

Having determined that Gardner was not covered in the "inclusive" language of the contract, the Court examines the language of exclusion. No estoppel to claim under the exclusion clause has been created here. The policy contains the provision:

"14. Changes. All Parts.
"Notice to any agent or knowledge possessed by any

agent or any other person shall not affect a waiver or a change in any part of this policy or estop the Company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy signed by a duly authorized representative of the Company."

It is admitted that the exclusion clause and the "change" clause, immediately above, were parts of the policy on January 6, 1962 and there is no evidence of endorsement to change these parts of the contract. It is the function of the courts to construe the contracts of litigants, not make them[6], and this Court has no authority to create by order a part of the policy contract. The knowledge that he was a police officer did not change the terms of the contract.

Gardner was in a non-owned vehicle "used in the * * * occupation of the insured", as defined in the "Exclusions".

■ The policy excludes non-owned automobiles while used in the business or occupation of the insured except private passenger automobiles.

In an annotation entitled, "Construction of Provisions Excluding Automobiles Used in Insured's 'Business or Occupation' From Non-owned Automobiles Coverage of Automobile Liability Policy", 85 A.L.R.2d 502, at page 503, it is said:

"Among the cases passing upon the question, it has generally been held that the term 'business or occupation' as used in the policy provision excluding coverage of a 'non-owned' or 'other' automobile while used in a 'business or occupation' of the insured is not restrictive in its

meaning unless so made by a provision of the policy, and therefore the courts have construed the term to include not only the regular business or occupation of the insured upon which he primarily depends for his livelihood but also any collateral business or occupation. * * *

Thus one who was a member of the National Guard driving a truck for only three days was held to be within the policy provision excluding an non-owned automobile used in "business or occupation" of the insured. Voelker v. Travelers Indemnity Company, supra.

The courts have used at least three different criteria to determine if an automobile is a "private passenger automobile"—(1) the test used by some courts is the type of vehicle as opposed to its ownership Miller v. Farmers Mutual Automobile Insurance Company, 179 Kan. 50, 292 P.2d 711; (2) other courts have applied the test of the use to which the vehicle is put. Aetna Life Insurance Company of Hartford, Connecticut v. Bidwell, 192 Tenn. 627, 241 S.W.2d 595; (3) still other courts have applied the test of ownership. 38 A.L.R.2d 867.

In the case before the Court the language of the policy is plain and speaks for itself.

Nor is there any cause to theorize here that the provisions of the South Carolina Motor Vehicle Safety Responsibility Act imposes any liability on plaintiff.[7]

Coverage is therefore excluded under the terms of the policy since the police car, a "non-owned" vehicle being used in the occupation of the insured as a policeman was not a "private passenger automobile".

The Clerk of Court shall enter judgment in favor of plaintiff.

And it is so ordered.

6. Ellis v. Capital Life and Health Insurance Company of Columbia, S. C., 229 S.C. 388, 93 S.E.2d 118.

7. See Booth v. American Casualty Company of Reading, Pennsylvania, 4 Cir., 261 F.2d 389.