# Richmond

## Harry Quesenberry v. Warren Allen Nichols and Erie Insurance Exchange.

March 4, 1968.

Record No. 6537.

Present, All the Justices.

*James C. Turk; Edwin C. Stone* (*Dalton, Poff, Turk & Stone*, on brief), for plaintiff in error.

*Eugene L. Nuckols; Edward C. Mackie* (Md.) (*Crowell, Deeds & Nuckols; Rollins, Smalkin, Weston & Andrew* (Md.), on brief), for defendant in error.

Harrison, J., delivered the opinion of the court.

This appeal involves the construction of an automobile liability

insurance policy issued by Erie Insurance Exchange, hereinafter called Erie, to Warren Allen Nichols, hereinafter called Nichols. Nichols is a resident of Jessup, Maryland, and the policy was written in that state.

Harry Quesenberry obtained a judgment in the Circuit Court of Pulaski County, Virginia, against Nichols for damages sustained in an automobile accident that occurred as a result of the negligent operation by Nichols of a Chevrolet station wagon owned by the Federal Aviation Agency, U. S. Government. Execution on the judgment was returned "no effects". Thereafter, on motion of Quesenberry, a summons in garnishment was issued against Erie and Nichols. Erie answered, denying it held any property belonging to Nichols and denying liability under the policy.

After certain preliminary proceedings, the case came on for trial before a jury. At the conclusion of Quesenberry's evidence, the court granted a motion to strike and entered summary judgment in favor of Erie. We granted a writ of error to the judgment.

The assignments of error question the action of the court in striking plaintiff's evidence and entering summary judgment, and in not submitting to the jury the question of coverage afforded under the terms of the policy. Quesenberry asserts the issues involved to be, whether the definition of a "non-owned automobile", as set out in the policy, is ambiguous and susceptible of more than one interpretation, and whether the automobile driven by Nichols was, as a matter of law, furnished for his regular use.

The policy in question is known as a "Pioneer Family Automobile Policy". There is no dispute over its validity, the fact that it was in effect at the time of the accident, and that Erie was authorized to do business in Maryland.

The principal coverage of the policy is the agreement of Erie to pay on behalf of insured (Nichols) all sums which he shall become legally obligated to pay as damages because of bodily injury sustained by any person, or property damage arising out of the ownership, maintenance or use of the owned automobile or a non-owned automobile.

The phrase "owned automobile" applies to the private automobile of Nichols described in the declarations which constitute a part of the policy.

"Non-owned automobile" is described in the policy as follows:

" '[N]on-owned automobile' means an automobile or trailer (a) not owned by, or furnished for the regular use of the named In-

sured by any government unit or agency; or (b) not owned by any relative, other than a temporary substitute automobile;"

The decision in this case turns upon the construction and application of clause (a) of the above paragraph to the facts of the case. This will determine if Erie is legally obligated to pay the judgment recovered by Quesenberry against Nichols.

Nichols had been in the employ of the Federal Aviation Agency, U. S. Government, for over a year prior to October 5, 1962. He was a member of a crew of men that worked for the FAA. They lived near Baltimore and were based at Alexandria, Virginia. This crew covered four states, moving frequently from one airport to another, usually returning to their homes over weekends. Included in their equipment were four or five government vehicles, ranging from station wagons to large trucks, used to transport the men and equipment back and forth from their headquarters in Alexandria to various airfields where their work was performed. The vehicles were used during the work week by the men for transportation to the job site, to hotels and motels in which they stayed, and to restaurants where they ate. Nichols testified that he was away from home on his job approximately 75% of the time. All members of the crew drove the various vehicles from time to time and the mileage driven each month was considerable. When away from home, it was normal practice for the crew to use one of the government vehicles to go out to eat, for no other transportation was available for this purpose.

The accident with Quesenberry occurred on Friday night, October 5, 1962. Apparently Nichols had not planned to return to his home in Maryland that weekend. In the early evening, Nichols used one of the government vehicles (the station wagon) to go to a local restaurant for dinner. Upon leaving the restaurant, he did not return to the motel but testified he got lost and ended up on a strange road where he had the accident.*

[1] Counsel for Quesenberry maintains that the "non-owned automobile" clause is so ambiguous as to be meaningless; or, in any event, its meaning is in doubt and presents a jury issue. He points to the evidence of five English professors, who testified at length

---

*Although not pertinent to Erie's liability, Nichols was convicted of operating the vehicle at the time under the influence of alcohol. In Quesenberry's brief, he states that the Federal Aviation Agency denied liability in this case on the grounds that Nichols was off duty and was not acting within the scope of his employment at the time of the accident.

regarding the grammatical construction of the clause. They concluded that it was not a proper sentence and was ambiguous.

Admittedly the sentence is inartfully drawn and punctuated, and if our responsibility here were one of analyzing this sentence from a grammatical standpoint or parsing it, we would be faced with the same difficulties that troubled the English scholars. The court, however, must read the contract as a single document, the meaning of which is gathered from all its associated parts when assembled as the unitary expression of the agreement of the parties. *New England Mutual Life Insurance Company of Boston* v. *Hurst,* 174 Md. 596, 199 A. 822 (1938).

In recent years some companies have written policies to cover a "non-owned automobile" and frequently define it as "any automobile, other than a temporary substitute automobile, not owned by, hired, or furnished for the regular use of either the named insured or any relative or member of his household". Annot. 83 A.L.R. 2d 926. Other policies obtain the same result of extending the driver's regular insurance to casual driving of cars other than his own without the payment of extra premium, by the use of the "drive other cars" clause or "use of other automobiles" clause, such clauses excluding coverage of other automobiles owned, hired, or regularly used by insured or a member of his household. *Giokaris* v. *Kincaid,* 331 S. W. 2d 633 (1960). See Annot. 86 A. L. R. 2d 937 (1962).

A leading case on "non-owned automobiles" is *Aler* v. *Travelers Indemnity Co.,* 92 F. Supp. 620 (D. Md. 1950). It concerned a provision of a policy extending and limiting, by exclusionary provisions, the insured's coverage on his Mercury automobile in his use of " 'any other automobile, subject to the following provisions *** (b) This insuring agreement does not apply: (1) to any automobile owned by, hired as a part of a frequent use of hired automobiles by, or furnished for regular use to the named insured or a member of his household other than a private chauffeur or domestic servant of the named insured or spouse;' ". The insured was driving his mother-in-law's Plymouth automobile at the time of the accident. The mother-in-law had been a member of the insured's household for a year or more, paying no rent or board, and at the time of the accident was ill and confined to her bed. The insured, his wife and his son had been using both cars when needed. The court, after analyzing the issues involved held that the exclusionary clause was not ambiguous and excepted from coverage the use of any other automobile (1) owned by the insured or a member of his household or (2)

furnished for regular use to the insured or a member of his household.

In *Commercial Insurance Co. of Newark, N. J.* v. *Gardner*, 233 F. Supp. 884 (E.D. S.C. 1964), the definition of a non-owned automobile in the policy there considered read, " 'non-owned automobile' means an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile."

The court quoted with approval from the *Aler* case and found that coverage was excluded under the terms of the policy since the police car there involved was a "non-owned" vehicle furnished by the employer and being used in the occupation of the insured Gardner as a policeman.

The policy involved in *Carr* v. *Home Indemnity Company*, 404 Pa. 27, 170 A. 2d 588, 83 A. L. R. 2d 922 (1961), defined a "non-owned automobile" in the exact language as the policy in *Commercial Insurance Co. of Newark, N. J.* v. *Gardner, supra*. There too it was argued that the definition was ambiguous and that the ambiguity should be resolved against the company. The court held that the policy was not ambiguous and did not include an automobile driven by the insured but owned by a relative. The court said, "If we were to hold otherwise we would be rewriting the insurance policy for the parties and this we cannot do . . ."

*Pray* v. *Leibfarth*, 106 F. Supp. 613 (E. D. Mich. 1952), involved the identical policy provision as *Aler*. The opinion of the district court and the majority opinion of the circuit court (*Travelers Indemnity Co.* v. *Pray*, 204 F. 2d 821 (6th Cir. 1953)) refused to follow the *Aler* case and the weight of authority, and held the exclusionary clause ambiguous, emphasizing the lack of a comma before the words "the named insured" in the phrase "or furnished for regular use to the named insured" for their holding.

We prefer the reasoning of the court in *Giokaris* v. *Kincaid*, 331 S. W. 2d 633, 86 A. L. R. 2d 925, (Mo. 1960) which agreed with the dissenting opinion in the *Pray* case (204 F. 2d at 825) and which "approved the construction given the exclusionary clause in the *Aler* case, *supra*, quoting *Ewing* v. *Burnet*, 11 Pet. 41, 54, 9 L. ed 624, [630] to the effect that instruments are construed from their four corners, and if the true meaning is apparent, 'the punctuation will not be suffered to change it.' " 331 S. W. 2d at 637, 86 A. L. R. 2d at 932.

[2] In our determination of what is a "non-owned automobile"

under Erie's policy to Nichols, we are controlled by well-established principles which govern the construction of any contract.

Chief Judge Prescott, in *Aviation Employees Insurance Co.* v. *Barclay*, 237 Md. 318, 323, 206 A. 2d 119, 121 (1965), said:

"A policy of insurance is a contract, and, in the absence of constitutional or statutory barriers, the parties thereto are at liberty to make their own agreement. It needs no citation of authority to assert that where there is ambiguity in the terms of an insurance policy, they should be liberally construed in favor of the insured and against the drafter of the policy; but this does not mean that a strained or unjustified construction of the policy is to be adopted, which disregards the plain meaning and intent of the parties . . ."

To the same effect, *Pilot Life* v. *Crosswhite*, 206 Va. 558, 561, 145 S. E. 2d 143, 146 (1965), where, after stating the general rule of liberal construction in favor of the insured, this court said:

"Contracts of insurance are to be liberally construed in favor of the insured, but if they are plain and clear and not in violation of law or inconsistent with public policy, we are bound to adhere to their terms. It is the function of the court to construe the language of the contract as written, and the court cannot make a new contract for the parties different from that plainly intended and thus create a liability not assumed by the insurer. . ."

In *Central Surety & Ins. Corp.* v. *New Amsterdam Cas. Co.*, 359 Mo. 430, 438, 222 S.W.2d 76, 80 (1949), it was said:

" 'The construction of insurance contracts are [*sic*] governed by the same general rules as are applied to the construction of other written contracts. "The function of the courts is to construe them, not to make them." ' *Henderson* v. *Massachusetts Bonding and Insurance Co.*, 337 Mo. 1, 84 S.W.2d 922, loc. cit. 924. Where possible, it is our duty to give every clause of the policy some meaning."

The policy involved here is basically not unlike a standard automobile liability policy. The general purpose and effect of such a policy is to protect the insured against liability arising from the use of his automobile, and in addition, from the infrequent or casual use of automobiles other than the one described in the policy. Usually excluded is protection against liability with respect to the insured's frequent use of another automobile.

Erie's "Pioneer Family Policy" is represented to contain extra protection features not found in the ordinary automobile policy. One of the features, it contends, is that its "non-owned automobile" exclusion clause was more liberal than similar clauses found in some

other policies in that it [provision (a) of the clause] excluded from the "non-owned automobile" category only those automobiles or trailers owned by a government unit or agency, or those automobiles or trailers furnished for the regular use of the insured by a government unit or agency.*

Upon a consideration of the contract of liability insurance between Erie and Nichols in its entirety, and giving effect to its various provisions, as we must, we conclude that the contract is not ambiguous. While the policy afforded Nichols broad coverage, there are exclusions, exceptions and conditions that were incorporated in, and became a part of, the contract between the parties.

[3] The "non-owned automobile" clause was manifestly written into the policy for a purpose, and we think it clear that the purpose was to limit Erie's liability and to exclude coverage under the policy on government owned vehicles operated by Nichols, or on vehicles furnished by the government for his regular use.

Aside from general principles, a careful analysis of the clause leads us to this conclusion. As the clause appears in the policy it reads, " '[N]on-owned automobile' means an automobile or trailer (a) not owned by, or furnished for the regular use of the named Insured by any government unit or agency . . ." If we add a comma after the fourteenth word of clause (a), "by", the meaning becomes apparent, for it would then read, " '[N]on-owned automobile' means an automobile or trailer (a) not owned by, or furnished for the regular use of the named insured by, any government unit or agency . . ." The latter is substantially in the form of the clause construed by the Maryland court in the *Aler* case.

However, it is not necessary that we rewrite or repunctuate this clause to determine its meaning. Omitting the comma, we first determine the object of the preposition "by", (the third word of clause (a) "not owned by"). One choice, that Insured is the object of the preposition, renders clause (a) meaningless, for it would read, "Not owned *by*, [or furnished for the regular use of] *the named insured* by any government unit or agency." The other choice, that unit or agency is the object of the preposition, gives the clause meaning:

*Franklin Yarian, Vice President of Erie and District Manager in charge of the company's Maryland branch office, was asked by counsel for Quesenberry what the "x" meant along the margin of the "non-owned automobile" clause of the policy. Without objection, he was permitted to compare Erie's policy with a standard policy, and he said: "Ours [meaning Erie's] is broader and that is the reason for the 'x' in that we are only excluding those automobiles owned by the government or furnished by the government for the regular use of our insured."

"Not owned *by*, [or furnished for the regular use of the named insured by] *any government unit or agency.*"

We interpret clause (a) to define a "non-owned automobile" as an automobile not owned by any government unit or agency or an automobile not furnished for the regular use of the named Insured by any government unit or agency. This is the same definition and conclusion that would have been apparent if we had added a comma in clause (a).

Nichols lives in the Washington-Baltimore area where there is a large concentration of government installations and government owned, leased and operated vehicles. Erie operates and writes insurance policies in that area. In the argument of counsel, reference was made to the problems and frustrations that insurance companies have in handling claims with government agencies involving contribution and subrogation.

Whatever its reason, Erie's policy with Nichols had in it the "non-owned automobile" clause, and under it an automobile or trailer owned by a government unit or agency is not a "non-owned automobile" and within the coverage afforded Nichols. Accordingly, we hold that he was not covered by his policy with Erie at the time he had the accident with Quesenberry, and the judgment of the trial court is

*Affirmed.*