### Richmond

CHARLES T. BERRY, JR., ET AL.

V.

CHARLES V. KLINGER, ET AL.

March 11, 1983.

Record No. 801686.

Present: Carrico, C.J., Cochran, Poff, Compton, Thompson, *
Stephenson, and Russell, JJ.

* Justice Thompson participated in the hearing and decision of this case prior to the effective date of his retirement on March 2, 1983.

*Peter R. Kolker [D.C.] (Wendy Manz; Zuckerman, Spaeder, Taylor & Kolker*, on briefs), for appellants.
*Dexter S. Odin (Odin, Feldman & Pittleman*, on brief), for appellees.

RUSSELL, J., delivered the opinion of the court.

This appeal involves the construction of the language of a contract. The question presented is whether the language is unambiguous, to be given effect according to its plain meaning, or is ambiguous, requiring the admission of extrinsic evidence to show its intended meaning.

Charles T. Berry, Jr., and F. Everett Wright brought an action against Charles V. Klinger and Gloria Klinger to recover certain real estate taxes and expenses advanced in connection with a projected development of the Klingers' property. They relied on a written contract between the parties dated October 21, 1968. At a non-jury trial, the court held that the contractual language was unambiguous, found that Berry and Wright were not entitled to recover according to its terms, and granted the Klingers' motion to strike at the close of Berry and Wright's case. We affirm these rulings.

The facts are largely undisputed. In 1960, Mrs. Klinger was the owner of a tract of land containing 11.876 acres at McLean, in Fairfax County. She and Charles Klinger were young, recently married, inexperienced in real estate development, and not affluent. Mrs. Klinger's mother, Edna Perry, knew Berry and Wright, who were active builders and developers at the time. Mrs. Perry suggested that Berry and Wright seek a rezoning of the property and attempt to develop it in cooperation with the Klingers. Berry and Wright were then operating through a corporation named English Village Construction Company, which has since been dis-

solved. They sue as its successors-in-interest as well as in their own names.

Pursuant to an oral understanding, Berry and Wright caused English Village to advance funds for architectural and legal fees incurred with respect to a proposed rezoning application for the property. Also, beginning in the early 1960's, English Village undertook the payment of the annual real estate taxes.

In 1968, the parties reduced their agreement to writing. Berry had the contract prepared by a Maryland attorney who was doing title work for him. ("I had him do it because we saved an attorney fee.") The parties to the writing are the Klingers, the corporation ("English"), Berry, and Wright. It recites the Klingers' ownership of the property, called "the premises," and continues with the following recitals:

> Klinger has requested Berry and Wright to assist them in developing and/or selling the premises.
>
> English has advanced funds to pay real estate taxes and to pay for the preparation of site plan studies and architectural drawings in order to demonstrate how the property may be developed under various types of zoning.
>
> English proposes to advance further funds in connection with an application for rezoning of the premises to the RT (Town House) category of the Fairfax County Zoning Ordinance.
>
> English will be repaid all of the funds advanced by it for the sale or development of the premises.
>
> Berry and Wright will furnish their personal services in connection with the application for rezoning, and in planning the development of the project.
>
> The parties wish to set out in writing a formula under which English may recover its costs, and Berry and Wright may receive compensation for their services.

Numbered paragraphs follow, providing, respectively: (1) that Berry and Wright will apply for rezoning to a town-house use; (2) that English will advance funds for rezoning expenses and will also pay real estate taxes for the "duration of this agreement;" (3) that Berry and Wright will have the right of first refusal if "Klinger decides to sell the property;" (4) that in the event the Klingers should sell the property for $125,000 or less, and if Berry

and Wright should fail to exercise their right of first refusal, the Klingers would repay to English all costs, expenses, and taxes advanced to date, but the remaining proceeds would belong to the Klingers; (5) if the property were sold to another party for more than $125,000, after repayment of costs, expenses, and taxes advanced by English, any remaining surplus in excess of $125,000 and the repayment would be divided two-thirds to the Klingers, one-sixth to Berry, and one-sixth to Wright; (6) if the property were rezoned, the Klingers would be allowed to participate in the proposed development as limited partners having a one-third interest. This paragraph makes no provision for the recovery of advances made by English.

The seventh, and final, paragraph, is the subject of the dispute. It provides:

> 7. If within ten (10) years from the date of this agreement Klinger has neither decided to sell the property or [sic] to develop it jointly with Berry and Wright, they will repay to English all of the funds advanced by English for real estate taxes, architects fees, professional fees, and other costs in connection with the rezoning.

The property was still owned by the Klingers at the time of trial, never having been rezoned, developed, or sold. Berry and Wright had made unsuccessful efforts to obtain rezoning and the Klingers had made unsuccessful efforts to sell. The property had been listed with brokers for many years. The Klingers had received offers, contingent upon rezoning, and had rejected them, but Berry and Wright make no serious contention that the Klingers unreasonably impeded the sale or development of the property. It is undisputed that economic conditions and terrain problems would make development of the land impracticable under existing zoning.

The Klingers assert that they were at all times ready and willing to sell the property, or to participate in a development if appropriate zoning could be obtained. Therefore, they contend, there is no evidence that they did not decided "to sell the property or to develop it jointly with Berry and Wright," so as to bring them within the effect of paragraph seven. They argue that under the plain meaning of the quoted language, Berry and Wright, in order to recover the costs, expenses, and taxes advanced by English,

have the burden of showing that the Klingers, within the ten-year duration of the agreement, "elected to withdraw from the venture," either by making a conscious decision not to develop or sell, or by unreasonably withholding their assent to an appropriate development or sale. The evidence was to the contrary, the Klingers contend, and was therefore properly struck by the trial court.

Berry and Wright, in their amended motion for judgment, treated paragraph seven, upon which their claim is solely based, as if it did not contain the words "decided to." Their pleading paraphrases it: "Paragraph 7 of the written agreement provides that if, within 10 years from the date of the agreement, *the parcel is neither sold nor developed* jointly by the plaintiffs and the defendants, the plaintiffs would be entitled to be repaid 'all of the funds advanced by English . . . .' " (emphasis added). At trial, Berry and Wright at first argued that paragraph seven was plain and unambiguous, and that the entire contract, read as a whole, manifested the intent that the funds advanced by English were to be repaid by the Klingers in any event. The words "decided to," they urged the court, "mean nothing." The court inquired whether Berry and Wright were contending that the words "decided to" should be "eliminated" as having "no meaning." Their counsel responded, "that is exactly right . . . that is right." Later counsel argued: "[M]y contention as I mentioned to Your Honor before is that the word has got to be read out of there . . . ."

The Court then pointed out to counsel that the parol evidence rule would not permit the introduction of extrinsic evidence to vary or explain the language unless it were found to be ambiguous, that is, "something which may have more than one meaning, or be subject to different interpretations." Counsel stated his agreement with this definition, promptly changed his position, and asserted that paragraph seven was ambiguous. Pressed to state the differing interpretations to which it was susceptible, counsel stated:

> Well, on the one hand, and I am sure Mr. Odin [defense counsel] is among them, who would say we would have to look to the subjective intent of the Klingers as to whether they had or had not decided [to sell]. That is his interpretation. My interpretation is that the word "decided to" is just an unfortunate word drafting here [drafting error?]; an addition of words that don't mean anything, and that the only

logical meaning of the phrase is that if they had at the expiration of ten years not sold, neither sold nor developed, then something was to occur.

The court thereupon ruled that the language was unambiguous, that parol evidence could not be introduced to explain or vary its meaning, and that Berry and Wright would have the burden of showing that the Klingers had made no decision to sell or develop. The court held that such a decision, or its absence, could be shown circumstantially. For instance, the court stated, the good faith of the Klingers' asserted decision to sell could be attacked if the evidence should show that their decision to sell were only "at a ridiculous price, then that is no decision at all." Upon Berry and Wright's failure to show either the absence of a decision to sell or develop on the Klingers' part, or their bad faith tainting such a decision, the court granted the Klingers' motion to strike.

Unless amended, a litigant's pleadings are binding upon him. His opponent is entitled to rely upon the position he takes, and should be able to prepare for trial with the assurance that this position will not be suddenly changed without notice. For this reason, a litigant will not be permitted to assume, successively, inconsistent and mutually contradictory positions. *Winslow* v. *Scaife*, 224 Va. 647, 299 S.E.2d 354 (1983). Berry and Wright, having contended in their pleadings and in their initial arguments at trial that the language in question was unambiguous, will not be allowed to take a contrary position thereafter.

Moreover, Berry and Wright's original position, examined more closely, was not actually changed, but was merely relabelled, and mislabelled at that. "Ambiguity" is defined: "the condition of admitting of two or more meanings, of being understood in more than one way, or of referring to two or more things at the same time." Webster's Third New International Dictionary 66 (3d ed. 1976). "Doubtfulness; doubleness of meaning . . . of an expression used in a written instrument." Black's Law Dictionary, 73 (5th ed. 1979). *See also Ayres* v. *Harleysville Mut. Cas. Co.*, 172 Va. 383, 2 S.E.2d 303 (1939). The language of paragraph seven cannot be so characterized. Berry and Wright make no contention that its words were of double or doubtful import. Since the words have a clear and plain meaning, Berry and Wright merely argue that the parties could not possibly have intended the meaning that they plainly convey. They contend that

the contract can only be interpreted according to the parties' intent if the questioned words are treated as an unfortunate error in draftsmanship, and given no meaning at all. They proffered Berry's testimony to the effect that these words did not represent his intentions at the time of signing the contract. This, of course, is the very state of affairs the parol evidence rule is designed to prevent. *Title Ins. Co. v. Howell*, 158 Va. 713, 164 S.E. 387 (1932). Berry and Wright ask us to adopt a rule permitting extrinsic evidence of the intentions of contracting parties, regardless of the clarity of the contract language. *See, e.g., Pacific Gas & Electric Co. v. G.W. Thomas Drayage, etc. Co.*, 69 Cal.2d 33, 69 Cal. Rptr. 561, 442 P.2d 641 (1968). We decline the invitation. We adhere to the "plain meaning" rule in Virginia: "[W]here an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself . . . . This is so because the writing is the repository of the final agreement of the parties." (Citations omitted). *Globe Company v. Bank of Boston*, 205 Va. 841, 848, 140 S.E.2d 629, 633 (1965).

The court must give effect to all of the language of a contract if its parts can be read together without conflict. Where possible, meaning must be given to every clause. The contract must be read as a single document. Its meaning is to be gathered from all its associated parts assembled as the unitary expression of the agreement of the parties. However inartfully it may have been drawn, the court cannot make a new contract for the parties, but must construe its language as written. *Quesenberry v. Nichols and Erie*, 208 Va. 667, 159 S.E.2d 636 (1968).

■ Berry and Wright contend, however, that the entire contract, read as a whole, inescapably evidences the parties' intent that English was to be reimbursed by the Klingers in any event and that paragraph seven is repugnant to this overall scheme in that it purports to depend upon a "decision" by the Klingers. We disagree.

Read as a whole, the contract is entirely consistent with an intention that English was to be reimbursed (1) if the land were sold to an outsider within ten years, or (2) if the Klingers withdrew from the arrangement by deciding against a sale or development, or unreasonably withheld their assent to a sale or development within ten years. A third possibility contemplated by the contract was Berry and Wright's acquisition of the property

through the exercise of their right of first refusal. No provision was made for the recovery of the funds advanced by English in this event, presumably because its recompense would come from the anticipated profits of development. A fourth possibility contemplated by the contract was a joint development in which the parties would become a partnership. No provision was made for reimbursement to English in this event because its recompense would presumably be its partnership interest in the anticipated profits. A fifth possibility existed: the failure of the property to qualify for rezoning for a period of ten years, which would have the effect of frustrating all efforts at sale or development without any withdrawal or fault by the Klingers.

We cannot say that it is incredible or repugnant to the overall contract scheme that English would be unprotected in this event. Berry and Wright, through English, would have paid a relatively small sum for the right to tie up a valuable piece of real estate for a period of ten years, in the hope of realizing a substantial profit if the parties' hopes came to fruition. The advances made by English, viewed in this light, were contributions of venture capital, expended for what was, in substance, a right of first refusal.

It is true that the recitals provide, "English will be repaid all the funds advanced by it for the sale or development of the premises." As the Klingers point out, the property was never sold or developed and no sale or development costs have been incurred. English has advanced taxes and rezoning costs. The recital is silent as to these. Moreover, even if the recital is construed so broadly as to include the funds actually advanced by English, it does not provide that the repayment is to be made by the Klingers in any event. It is equally consistent with the view that Berry and Wright agreed, between themselves, in certain circumstances, to restore to the corporation the funds which their corporation had advanced. This conclusion is strengthened by the language of paragraph four, clearly obligating the Klingers to reimburse English for taxes and rezoning costs if the land is sold to a stranger: "Klinger agrees to repay English all of the costs advanced by it in payment for real estate taxes, preparation of site plan studies, architectural drawings, and other expenses in connection with the proposed change of zoning." The contrasting language of the two provisions is significant.

For these reasons, the trial court properly construed the contract provisions as mutually consistent, clear and unambiguous.

Since the plaintiffs' evidence failed to show that they were entitled to recover under its provisions, the court correctly granted the Klingers' motion to strike. Accordingly the judgment will be

*Affirmed.*