**WELLMORE COAL CORPORATION,
Plaintiff,**

v.

**PATRICK PETROLEUM CORPORATION of MICHIGAN, Defendant.**

Civ. A. No. 91–0090–A.

United States District Court,
W.D. Virginia,
Abingdon Division.

Dec. 3, 1992.

---

Russell M. Large, Grundy, VA, for plaintiff.

William B. Poff, Julie D. McClellan, Roanoke, VA, for defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

This case is currently before the Court on both Plaintiff's and Defendant's motions for summary judgment. Defendant, Patrick Petroleum Corporation of Michigan ("Patrick Petroleum"), is a corporation organized and existing under the laws of the State of Michigan, with its principal place of business in Michigan. Plaintiff, Wellmore Coal Corporation ("Wellmore Coal"), is a corporation organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business in Grundy, Buchanan County, Virginia. The case was properly removed to this Court pursuant to 28 U.S.C. §§ 1441, 1446. Jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332 (1992).

## FACTS

By Stock Purchase Agreement ("Agreement") dated May 18, 1984, Wellmore Coal purchased from the Patrick Petroleum all of the issued and outstanding capitol stock of Patrick Coal Corporation ("PCC"), consisting of fifteen (15) shares of common stock par value one hundred dollars ($100.00) per share. Section 5.1 of the Agreement provides, *inter alia,* as follows:

> [Patrick Petroleum] shall bear and remit, and shall indemnify and hold [Wellmore Coal] harmless against, (a) any and all federal, state and local income taxes levied or imposed upon or in connection with PCC's business that are payable or have accrued prior to and including the date of this Agreement, and (b) any and all manufacturer's excise, federal and state withholding, Federal Insurance Contributions Act, federal employment and state employment taxes, license fees and and [sic] other charges or taxes levied or imposed upon or in connection with PCC's business that are payable prior to and including April 30, 1984 ...

The subsequent section 5.2 reads, *inter alia* as follows:

> [Patrick Petroleum] shall not have any liability for reclamation with respect to coal mining activity conducted by PCC after the date hereof, and [Wellmore Coal] shall indemnify and hold harmless [Patrick Petroleum] against any such liability. [Wellmore Coal] shall not have any liability for reclamation not current with respect to coal mining activity conducted by PCC through the date hereof,

and [Patrick Petroleum] shall indemnify and hold harmless [Wellmore Coal] against any such liability.

Section 5.4 of the Agreement provides that as soon as it is practicable after the closing date, Wellmore Coal shall cause PCC to terminate the use of the name "Patrick." PCC is a corporation organized and existing under the laws of the Commonwealth of Virginia, with its principal place of business in Buchanan County, Virginia. As of July 31, 1992, PCC remained a corporation in good standing in Virginia, continuing to exist under the name "Patrick Coal Corporation." According to the November 1, 1992, affidavit of James W. McGlothlin, President and Chief Executive Officer of the United Company, of which Wellmore Coal is a subsidiary, a name change would entail the renegotiation or assignment of numerous leases, permits, and bonds. In his affidavit, Mr. McGlothlin states that he contacted Charles D. Robinson, Vice–President of Patrick Petroleum, advised him of the foregoing problem, requested that the leases, permits, and bonds be allowed to remain in the name of Patrick Coal Corporation, and Mr. Robinson agreed.

The United States Department of the Interior, Office of Surface Mining ("OSM") conducted an audit of particular calendar quarters of operation pertaining to mining contractors of PCC for the period of 1977 to 1987. OSM's audit revealed an adjustment in the tonnage reported of 449,957.50 tons on which Abandoned Mine Land Reclamation Fees ("reclamation fees") had not been paid. Consequently, on February 19, 1990, OSM submitted to Wellmore Coal's parent company, United Coal Company, bill number 890103191 in the amount of $136,-749.13. Of this amount, Wellmore Coal alleges that the sum of $134,490.00 is attributed to the business of PCC prior to and including April 30, 1984.

On March 28, 1990, OSM issued a second notice for the monies due for the tonnage adjustment shown in its audit. Wellmore Coal allegedly tendered payment in the amount of $136,749.13 to OSM on May 25, 1990, by check number 5880 drawn on NCNB National Bank of Florida, payable to the order of the Office of Surface Mining. According to Wellmore Coal, its agents conducted numerous conversations with Patrick Petroleum and its agents regarding Patrick Petroleum's obligation under the terms and conditions of the Agreement to indemnify Wellmore Coal for all taxes, fees, and other charges or taxes levied or imposed upon or in connection with PCC's business that were payable prior to and including April 30, 1984.

According to Patrick Petroleum, the audit was conducted from 1988 through the summer of 1989, long after Wellmore assumed control of PCC. Patrick Petroleum further claims that its first notice of the audit and assessment was a letter dated September 21, 1990, four months after Wellmore Coal allegedly paid OSM and two years after the initiation of the OSM audit.

Patrick Petroleum has refused to reimburse Wellmore Coal for the AML fees attributable to the business of PCC prior to and including April 30, 1984. On July 10, 1991, Wellmore Coal filed its initial pleading, alleging that Patrick Petroleum's refusal to indemnify Wellmore Coal constitutes a breach of the terms and conditions of the Agreement and moving this Court for judgment in the amount of $134,490.00 together with interest. Wellmore Coal filed a motion for summary judgment on July 6, 1992 and Patrick Petroleum likewise filed a motion for summary judgment on August 10, 1992.

## DISCUSSION

Under Federal Rule of Civil Procedure 56(c) a trial judge must grant summary judgment when there is no genuine issue as to any material fact and the moving party is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Summary judgment is appropriate in contract actions when the relevant language of the contract is unambiguous. *Winn v. Aleda Constr. Co.,* 227 Va. 304, 307, 315 S.E.2d 193, 194 (1984).

In the present case, Patrick Petroleum contends that there is no genuine issue of

material fact regarding Wellmore Coal's right to indemnification of reclamation fees under the Agreement. Patrick Petroleum contends that reclamation fees are not "charges or taxes" within the meaning of the Agreement and, therefore, are not fees for which Patrick Petroleum should indemnify Wellmore Coal. Wellmore Coal contends that Patrick Petroleum's refusal to indemnify constitutes a breach of the terms and conditions of the Agreement.

Reading the Agreement as a single document, the Court concludes that Section 5.1, which provides that Patrick Coal will be responsible for "license fees and and [sic] other charges or taxes levied or imposed upon or in connection with PCC's business," includes reclamation fees, thus entitling Wellmore Coal to partial summary judgment. The Court also concludes that the issues of liability, amount of damages, and use of the name "Patrick," are questions involving disputed issues of material fact, which, as such, are inappropriate questions for summary judgment.

### I. Reclamation Fees As Taxes

■ Patrick Petroleum urges the Court to read Section 5.1 of the Agreement in isolation, but this the Court cannot do. Indemnity agreements are subject to general rules of contract construction. *Seaboard Air Line R.R. Co. v. Richmond–Petersburg Turnpike Auth.*, 202 Va. 1029, 1033, 121 S.E.2d 499, 503 (1961). Under general rules of contract construction, the Agreement must be read as a single document. *See e.g., Berry v. Klinger*, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983); *Quesenberry v. Nichols*, 208 Va. 667, 670, 159 S.E.2d 636, 638 (1968).

■ If sections of a contract may be read *together without conflict*, then the court must give effect to all of the language of the contract. *Berry*, 225 Va. at 208, 300 S.E.2d at 796. Meaning must be given to every section of a contract where possible. *Id.* The meaning of a contract "is to be gathered from all its associated parts assembled as the unitary expression of the agreement of the parties." *Id.*

■ Patrick Petroleum, focusing only on the language in Section 5.1, correctly observes that the section does not mention "reclamation fees" *per se*. Relying on the absence on any explicit mention of such fees, Patrick Petroleum argues that the Agreement does not clearly and definitely show an intention for it to indemnify Wellmore Coal for reclamation fees. Read out of context, Section 5.1, upon which Patrick Petroleum relies, does appear to support Patrick Petroleum's conclusion. However, read as a whole, the language of the Agreement compels a contrary conclusion. The plain language of the Agreement requires Patrick Petroleum reimburse Wellmore Coal for reclamation fees.

Under Section 5.1 of the Agreement, Patrick Petroleum must indemnify Wellmore Coal for charges or taxes incurred in connection with PCC's business that are payable prior to and including April 30, 1984. While the section does not list reclamation fees, neither does it purport to exclude them. Section 5.1 does itemize certain charges and taxes that Patrick Petroleum will be responsible for, but it also concludes by stating inclusively "license fees and and [sic] other charges or taxes."

The section immediately following 5.1, Section 5.2, entitled *"Reclamation Activity,"* requires Patrick Petroleum to indemnify Wellmore Coal for reclamation with respect to coal mining activity conducted by PCC through the date of the Agreement. These words are consistent with Section 5.1 and should be interpreted as referring to the "other charges or taxes" language in Section 5.1.

Patrick Petroleum's interpretation of the Agreement renders the clause "license fees and and [sic] other charges or taxes" superfluous. The Court is mindful of the presumption in the law that parties have not used words aimlessly and "the court will not treat any word or clause as meaningless if any reasonable interpretation consistent with the other portions of the contract can be ascribed to it." *Daugherty v. Diment*, 238 Va. 520, 525, 385 S.E.2d 572, 574 (1989); *see Ross v. Craw*, 231 Va. 206, 214, 343 S.E.2d 312, 317 (1986); *Winn*

*v. Aleda Constr. Co.*, 227 Va. 304, 307, 315 S.E.2d 193, 195 (1984). In the Court's interpretation of the Agreement, every section must be construed, if possible, to operate in one shape or another. *Joseph F. Hughes & Co. v. George H. Robinson Corp.*, 211 Va. 4, 6, 175 S.E.2d 413, 415 (1970). The Court "cannot presume that the parties to [a contract] intended to include therein a provision of no effect." *Id.*

Patrick Petroleum also argues that the Court should not hold reclamation fees to be "taxes" within the meaning of the Agreement, because, it erroneously states, this Court previously held in *United States v. E & C Coal Co.*, 647 F.Supp. 268 (W.D.Va.1986), that reclamation fees are not excise taxes. Patrick Petroleum mischaracterizes the *E & C Coal* holding. In *E & C Coal* this Court held that reclamation fees are not an excise tax within the meaning of subtitle D of the Internal Revenue Code. *E & C Coal Co.*, 647 F.Supp. at 274. The Court did *not* state that reclamation fees are not excise taxes. Indeed, the Court expressly recognized that reclamation fees "may" be an excise tax. *Id.; see also United States v. Ringley*, 750 F.Supp. 750, 754 (W.D.Va.1990) ("reclamation fees are considered excise taxes").

The Court notes that several jurisdictions expressly recognize that reclamation fees may be "taxes." *See e.g., United States v. Tri–No Enters.*, 819 F.2d 154, 158 (7th Cir.1987) (a reclamation fee is not a "fine, penalty, or forfeiture ... [a] reclamation fee is simply an assessment or excise tax"); *United States v. Devil's Hole, Inc.*, 747 F.2d 895, 898 (3d Cir.1984) (reclamation fee "is a fee or excise tax"); *United States v. Spring Ridge Coal Co.*, 793 F.Supp. 124, 129 (N.D.W.Va.1992) (reclamation fee is a "tax"); *United States v. Fire Ring Fuels, Inc.*, 788 F.Supp. 326, 329 (E.D.Ky.1991) (reclamation fee is a "tax"), *reh'g denied*, 788 F.Supp. 330 (E.D.Ky.1992); *United States v. Gary Bridges Logging & Coal Co.*, 570 F.Supp. 531, 532 (E.D.Tenn.1983).

Patrick Petroleum asserts that Section 5.2 only addresses liability for expenses associated with the "cost" of reclamation.

The Court acknowledges a distinction between the *cost* of reclamation, *see* 30 U.S.C. §§ 1258 *et seq.*, and reclamation *fees*, *see* 30 U.S.C. §§ 1231 *et seq.* However, the Court notes that contrary to Patrick Petroleum's assertion, Section 5.2 does not limit its applicability to "cost" alone. Instead, the section broadly states "[Wellmore Coal] shall not have any liability for reclamation not current with respect to coal mining activity conducted by PCC through the date hereof, and [Patrick Petroleum] shall indemnify and hold harmless [Wellmore Coal] against any such liability."

■ Patrick Petroleum, in hindsight, obviously wishes that Section 5.2 or Section 5.1 of the Agreement had been drafted to exclude reclamation fees. It accordingly urges this Court to read nonexistent provisions into the Agreement. However, in the construction of a contract, courts have no power "to read into it words of exclusion not contained therein." *Montague Mfg. Co. v. Homes Corp.*, 142 Va. 301, 311, 128 S.E. 447, 450 (1925). However unartfully the Agreement may have been drawn, this Court cannot now make a new contract for the parties. The function of the court in contract construction is to construe the contract written by the parties, "'not to make a contract for them.'" *Blunt v. Lentz*, 241 Va. 547, 552, 404 S.E.2d 62, 65 (1991) (quoting *Great Falls Hardware Co. v. South Lakes Village Ctr. Assocs.*, 238 Va. 123, 125–26, 380 S.E.2d 642, 643–44 (1989)).

Patrick Petroleum asserts two rules of legal construction which the Court will now address. Patrick Petroleum claims these rules clearly indicate that the language of Section 5.1 does not encompass reclamation fees. First, citing rules of legal drafting, Patrick Petroleum strenuously argues that the absence of a comma before the phrase "and other charges" indicates that the phrase is merely a modification or qualification of the preceding term "license fees." While the Court may agree that the Agreement is not a model of grammatical perfection,[1] it is unpersuaded by Patrick Petroleum's argument.

---

1. The court finds it puzzling that such lengthy

and detailed argument is made over the absence

The language of the Agreement, read as a whole, clearly and distinctly indicates that the parties intended for Patrick Petroleum to indemnify Wellmore Coal for reclamation fees incurred by PCC up until the date of the Agreement. The Court will not allow rules of grammar or punctuation to contravene the manifest intention of the parties as gathered from the language employed in the Agreement. *See Quesenberry v. Nichols & Erie Ins. Exchange*, 208 Va. 667, 671, 159 S.E.2d 636, 640 (1968).

The cardinal rule for construing contracts is to ascertain and give effect to the intent of the parties, "[T]he pole star for the construction of a contract is the intention of the contracting parties *as expressed by them in the words they have used....* It is the court's duty to declare what the *instrument itself* says it says." *Ames v. American Nat'l Bank*, 163 Va. 1, 38, 176 S.E. 204, 216 (1934) (emphasis in original). Grammatical niceties, while frequently useful in discerning the intent of parties to a contract, never prevail over the true intent of the parties. *Quesenberry*, 208 Va. at 670, 159 S.E.2d at 638. As the Supreme Court of Virginia has recognized, "[I]nstruments are construed from their four corners, and if the true meaning is apparent 'the punctuation will not be suffered to change it.'" *Id.* at 671, 159 S.E.2d at 639 (quoting *Giokaris v. Kincaid*, 331 S.W.2d 633, 637 (Mo.1960)). Likewise, the following text from American Jurisprudence is in accord that rules of grammar, while helpful, are not controlling:

> While the grammatical construction of a contract is often a reliable signpost in the search for the intention of the parties, at times the language of a contract, read as a whole and in light of the circumstances surrounding its execution, may disclose an intention which would be thwarted by a strict grammatical construction; in such case the court is not bound to follow the signpost of grammatical construction, particularly when it appears to point in the wrong direction,

as intention may be formulated in terms that are not grammatical.

17A Am.Jur.2d *Contracts* § 369 (1991); *see also* 17A C.J.S. *Contracts* § 305 (1963 & Supp.1992). Stronger words were used by the United States Court of Appeals for the Tenth Circuit:

> [N]either the rules of grammatical construction, nor any other rule, should be indulged to confuse what is otherwise manifestly plain. Courts will not resort to grammatical niceties or the technicalities of punctuation in the interpretation and construction of an instrument, unless they may be utilized to make plain that which is otherwise obscure.

*Hughes v. Samedan Oil Corp.*, 166 F.2d 871, 873 (10th Cir.1948).

Second, Patrick Petroleum argues, that even with the insertion of a comma, the phrase "license fees and and [sic] other charges or taxes" does not encompass reclamation fees. Patrick Petroleum observes, correctly, that, according to the rule of *ejusdem generis*, general terms of description are limited in scope by the specific words they follows. This premise is a rule of statutory and contract construction, recognized in the Commonwealth of Virginia, but sparingly applied. *See W.T. Magann Corp. v. Virginia–Carolina Elec. Works, Inc.*, 203 Va. 259, 263, 123 S.E.2d 377, 380 (1962).

■ The flaw in Patrick Petroleum's argument is that it relies on a myopic view of the Agreement. The Court cannot view rules of legal construction in isolation, blind to the document as a whole. *See supra.* This Court will not apply general rules of construction "mechanistically" when such a construction would thwart the intent of the contracting parties as evidenced by their agreement. *See American Realty Trust v. Chase Manhattan Bank*, 222 Va. 392, 403, 281 S.E.2d 825, 831 (1981).

■ Specifically, the rule of *ejusdem generis* "should not be applied so as to do violence to the language employed in the

of a comma in Section 5.1 and yet not the briefest mention is made by either party of the gross typographical error in the same precise

area of Section 5.1, namely, the duplicated "and."

**536**

instrument." *W.T. Magann Corp.*, 203 Va. at 263, 123 S.E.2d at 380 (quoting *Washington & Old Dominion Ry. v. Westinghouse Elec. & Mfg. Co.*, 120 Va. 620, 626, 89 S.E. 131, 133, *rev'd in part on other grounds*, 120 Va. 620, 91 S.E. 646 (1917)); *see also Amos v. Coffey*, 228 Va. 88, 94, 320 S.E.2d 335, 338 (1984). Even authority cited by Patrick Petroleum recognizes that *ejusdem generis* " 'is not a cast iron rule, it does not override all other rules of construction, and is never applied to defeat the real purpose ... as that purpose may be gathered from the whole instrument.' " *Hickman v. Cabot*, 183 F. 747, 749 (4th Cir.1910) (quoting *United States v. Mescall*, 215 U.S. 26, 31, 30 S.Ct. 19, 20, 54 L.Ed. 77 (1909)).

▇▇ Because the Agreement clearly shows that the parties intended the "catch all" provision to include reclamation fees, the Court must construe the provision in such a way as to carry out the intention of the parties. The insistence of one party is no reason to strain the meaning of contract language, "[W]here an agreement is complete on its face, is plain and unambiguous in its terms, the Court is not at liberty to search for its meaning beyond the instrument itself." *Globe Iron Constr. Co. v. First Nat'l Bank*, 205 Va. 841, 848, 140 S.E.2d 629, 633 (1965). In the present case, the plain language of the Agreement requires Patrick Petroleum reimburse Wellmore Coal for reclamation fees. Sections 5.1 and 5.2 are mutually consistent, clear and unambiguous. The broad language of Section 5.2, requiring Patrick Petroleum to indemnify Wellmore Coal "against any such liability" for reclamation activity, and the language in Section 5.1 requiring indemnification for "other charges or taxes levied or imposed upon or in connection with PCC's business," clearly encompass reclamation fees. While reclamation fees are not specifically listed in Section 5.1, this does not preclude the fees from being a "tax" within the meaning of Section 5.1. Due to the Court's interpretation of the Agreement, the Court has no doubt that reclamation fees are in fact, as well as in law, a tax within the meaning of Section 5.1 and the Court so holds.

## II. Issue of Liability and Amount of Damages

▇▇ Alternately, regardless of the Court's interpretation of Section 5.1 of the Agreement, Patrick Petroleum maintains that Wellmore Coal is not entitled to summary judgment because it voluntarily paid the reclamation fees without notifying Patrick Petroleum of the OSM assessment, or giving Patrick Petroleum an opportunity to contest the assessment. Patrick Petroleum, therefore, contests both liability and the proper amount thereof. The Court agrees that both the issues of liability and the proper amount thereof are inappropriate for resolution by summary judgment.

"Summary judgment shall not be entered if any material fact is genuinely in dispute." Rule 3.18. Summary judgment is not a substitute for trial when an issue of fact exists. *Kasco Mills, Inc. v. Ferebee*, 197 Va. 589, 593, 90 S.E.2d 866, 870 (1956). In ruling on a motion for summary judgment, the Court must draw those inferences most favorable to the non-moving party. *Bloodworth v. Ellis*, 221 Va. 18, 23, 267 S.E.2d 96, 99 (1980).

▇▇ In subsection II of the Memorandum in Support of Defendant's Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment, Patrick Petroleum alleges that it was first notified of the OSM assessment by a letter dated September 21, 1990, four months after Wellmore Coal allegedly paid OSM and two years after the initiation of the OSM audit. As a result, Patrick Petroleum alleges that it was not given an opportunity to participate in the audit or defend the audit assessment. Patrick Petroleum correctly notes that under existing principles of indemnification law, Wellmore Coal, as an indemnitee, has the burden of actually proving the liability for which the indemnification is sought if it fails to provide Patrick Petroleum, as an indemnitor, with notice and an opportunity to defend against the potential liability. *See Southern Ry. Co. v. Arlen Realty & Dev. Corp.*, 220 Va. 291, 295–96, 257 S.E.2d 841, 844 (1979).

Failure to provide Patrick Petroleum with notice and an opportunity to defend itself, while not a bar to recovery, prohibits Wellmore Coal from using payment of the alleged debt as conclusive evidence of the indemnification obligation. *See id.* If, as alleged, Wellmore Coal failed to provide notice and an opportunity to defend, it would be required to actually prove liability. *See Jennings v. United States,* 374 F.2d 983 (4th Cir.1967), *cited in Whittle v. Timesavers, Inc.,* 572 F.Supp. 584, 587–88 (W.D.Va.1983), *rev'd on other grounds,* 749 F.2d 1103 (4th Cir.1984).

The Court concludes that the allegations set forth above and in subsection II of the Memorandum in Support of Defendant's Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment create a material issue of fact, making summary judgment inappropriate. *See Kasco Mills,* 197 Va. at 593, 90 S.E.2d at 870. Therefore, Wellmore Coal's request for summary judgment on both the issues of liability and the proper amount thereof is denied.

### III. Breach by Wellmore Coal Through Use of Patrick Name

■ Patrick Petroleum argues that Wellmore Coal may not enforce any provision in the Agreement due to its own material breach of the Agreement. Section 5.4 of the Agreement, upon which Patrick Petroleum relies, requires Wellmore Coal "as soon as practicable" amend the articles of incorporation of PCC, excluding any reference to "Patrick" and terminating use of any Patrick marks or logos.

Patrick Petroleum has established that PCC remains a corporation in good standing, continuing to exist under the name "Patrick Coal Corporation." However, the mere fact that the corporation is still in existence is insufficient evidence that there has been a breach of Section 5.4 of the Agreement. Section 5.4 of the Agreement requires only that Wellmore Coal stop using the name Patrick as soon as practicable. It is a well-accepted principle of contract construction that where a contract is silent as to the time within which an act is to be performed, the law implies a reason-

able time. *Grossmann v. Saunders,* 237 Va. 113, 120, 376 S.E.2d 66, 70 (1989). The determination as to what constitutes a reasonable time is generally an issue to be decided by a properly instructed jury. *Id.* at 121, 376 S.E.2d at 70.

Likewise, in the present case, the Court does not have sufficient information upon which to rule as a matter of law that Wellmore did not stop using the name Patrick "as soon as practicable." There is conflicting evidence as to the feasibility of a name change. There is also an allegation before the Court that the Vice–President of Patrick Petroleum agreed to allow leases, permits, and bonds to remain in the name of Patrick Coal Corporation.

■ Furthermore, even assuming that the continued use of the name Patrick constitutes a breach of Section 5.4 of the Agreement, this breach is entirely independent of the duties imposed upon Patrick Petroleum under the Agreement and does not excuse any breach by Patrick Petroleum. The general rule that a plaintiff has no cause of action for a breach of a contract where he himself first broke the contract has no application in the present case because the alleged breach by Wellmore Coal does not "go to the root of the contract." *Neely v. White,* 177 Va. 358, 366, 14 S.E.2d 337, 340 (1941).

Here the alleged breach by Wellmore Coal goes only to a minor part of the consideration. The apparent failure of Wellmore Coal to comply with the provisions of Section 5.4 will not justify rescission of the entire contract or preclude Wellmore Coal from bringing an action thereon. The Agreement has been so substantially performed that the unperformed Section 5.4 furnishes no justification for barring Wellmore Coal's action.

The controlling legal principle, as adopted by the Supreme Court of Virginia, is clearly stated as follows:

> It does not follow in every case of mutual and dependent promises that upon a failure of one party to perform his promise the other party will be exonerated or excused from performing his promise. Before partial failure of performance of

one party will excuse the other from performing his contract or give him a right of rescission, the act failed to be performed must go to the root of the contract. A failure of consideration of such a degree that the remaining consideration may be deemed to be no substantial consideration is an excuse for non-performance of a promise. A failure to perform a promise, the performance of which is a condition precedent, is an excuse for nonperformance of the promise made by the other party. But a failure of an unsubstantial part of the consideration for a contract is not such an excuse. Such failure of the consideration is merely a ground for an abatement of the damages.

*Neely,* 177 Va. at 366–67, 14 S.E.2d at 340–41 (quoting 12 Am.Jur.2d *Contracts* § 360); *see also,* 17 C.J.S. *Contracts* § 130 (1963 & Supp.1992); 5 Walter H. Jaeger, *Williston on Contracts* §§ 663, 665 (3d ed. 1961).

For the foregoing reasons, the Court holds that the question of whether there has been a breach of Section 5.4 of the Agreement is an inappropriate question for summary judgment and Patrick Petroleum's request for summary judgment on that basis is denied.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion for summary judgment is hereby GRANTED in part and DENIED in part and Defendant's motion for summary judgment is hereby DENIED.