TRAXLER, Circuit Judge,
concurring and dissenting:
I concur in the majority’s determination that Lone Mountain’s indemnification claim accrued no earlier than June 1996 and that its indemnification claim, therefore, is not barred by the applicable statute of limitations. I also believe, however, that Lone Mountain’s breach of contract and professional negligence claims were timely filed. Accordingly, I respectfully dissent from the majority’s affirmance of the dismissal of those claims.
As to the breach of contract claim, the majority concludes Lone Mountain accepted and approved the plans for the coal slurry impoundment in April 1995 when it made the final payment to Bowser-Morner and that, under Virginia law, all of Lone Mountain’s design-defect claims accrued at that time. I agree that a design-defect claim accrues under Virginia law when the plans are approved. See Comptroller ex rel. Virginia Military Inst. v. King, 217 Va. 751, 232 S.E.2d 895, 900 (1977) (“We cannot escape the conclusion that V.M.I. has alleged a cause of action for improper design which accrued when the plans were finally approved.” (emphasis added)); see also Nelson v. Commonwealth, 235 Va. 228, 368 S.E.2d 239, 247 (1988). In this case, however, I do not believe that approval occurred upon payment by Lone Mountain.
The contract between Lone Mountain and Bowser-Morner conditions Lone Mountain’s obligation to pay upon its “approval and acceptance of the work.” J.A. 171. If this were the only relevant contractual provision, then I might agree that, under VMI and Nelson, Lone Mountain’s design claims accrued upon payment. The payment clause, however, must be considered along with the clauses defining Bowser-Morner’s obligations under the contract. See, e.g., Berry v. Klinger, 225 Va. 201, 300 S.E.2d 792, 796 (1983) (“The court must give effect to all of the language of a contract if its parts can be read together without conflict. Where possible, meaning must be given to every clause. The contract must be read as a single document. Its meaning is to be gathered from all its associated parts assembled as the unitary expression of the agreement of the parties.”). Bowser-Morner was obligated under the contract to design the slurry impoundment “in accordance with all MSHA requirements and memoranda as well as with the Commonwealth of Virginia crite *160 rio,” J.A. 161 (emphasis added), and to answer questions that arose during the federal and state permitting processes. Thus, the contract required Bowser-Morner to do more than simply deliver plans that satisfied Lone Mountain’s particular business needs — the plans also had to comply with significant state and federal regulatory requirements.
In my view, the presence of these complex regulatory permitting schemes and Bowser-Morner’s contractual obligation to deliver plans that conformed with all regulatory requirements distinguishes this case from King and Nelson. In King and Nelson, the defendant’s contractual obligation was to deliver plans that suited the client’s particular business needs, and the client was fully capable of determining the suitability of the plans. Thus, the client’s approval of the plans signified that the contractual obligation to provide plans had been fulfilled. In this case, however, while Lone Mountain was capable of reviewing the plans to determine whether they satisfied its specific business needs, it did not have the expertise to know whether Bowser-Morner’s plans complied with the complex regulatory requirements. That determination could be made only upon approval of the plans by the appropriate state and federal agencies. Thus, while Lone Mountain’s payment may have indicated that the plans met its specific business needs, the payment and approval by Lone Mountain cannot be viewed as an indication that the plans conformed with state regulations, as required by the contract.
Accordingly, I would hold that Lone Mountain’s design-defect claims did not accrue until November 17, 1995, when the plans were approved by Virginia’s Division of Mined Land Reclamation and Bowser-Morner’s final obligation under the contract was fulfilled.* Lone Mountain’s complaint, filed in May 2000, was thus timely under the applicable five-year statute of limitations. From this conclusion it follows that Lone Mountain’s professional negligence claims were also timely filed. See, e.g., Oleyar v. Kerr, 217 Va. 88, 225 S.E.2d 398, 400 (1976) (explaining that a professional malpractice claim, “while sounding in tort, is an action for breach of contract and thus governed by the statute of limitations applicable to contracts”). I therefore dissent from the conclusion that Lone Mountain’s breach of contract and professional negligence claims were not timely filed.

 This analysis makes it unnecessary for me to consider the significance of the actions with regard to the impoundment that Bowser-Morner took after the April 1995 payment or whether Lone Mountain’s claim could be considered timely under the '‘continuing services” doctrine.