COURT OF APPEALS OF VIRGINIA

Present: Judges Frank, McClanahan and Haley
Argued at Richmond, Virginia


TILMAN A. NADOLSKI

MEMORANDUM OPINION* BY
v.      Record No. 1781-07-2      JUDGE JAMES W. HALEY, JR.
JULY 29, 2008

ANJA INGEBOURG HEYNE NADOLSKI


FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Melvin R. Hughes, Jr., Judge

W. Todd Watson (Hargett & Watson, PLC, on brief), for appellant.

(Anja I. H. Nadolski, *pro se*, on brief). Appellee submitting on brief.


I. INTRODUCTION

Tilman A. Nadolski (husband) appeals the final decree of the Circuit Court for the City of

Richmond, which granted Anja I. H. Nadolski (wife) a divorce from husband and determined the

rights of the parties. In assignments of error consolidated for this appeal, husband argues the

circuit court erred in (1) misconstruing the parties' post-nuptial agreement (PNA); (2) failing to

award husband attorney fees and costs pursuant to the agreement; and (3) calculating husband's

child support obligation. We affirm in part, reverse in part, and remand for further proceedings

consistent with our decision.

II. FACTS

Husband and wife married in 1999. They have one minor son.

After a temporary separation, husband and wife reconciled and in March 2004 entered

into the PNA governing any future separation. Relevant provisions follow:

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## Housing

(g) Husband shall provide suitable housing for Wife in the event of any subsequent permanent separation. Wife will vacate the marital residence within two (2) weeks of the provision of this housing. Husband's obligation to provide such housing will be as follows:

(i) Husband will assist Wife in obtaining a home up to a value of $150,000. If Wife desires to obtain a residence with a greater value, she may do so.

(ii) Husband will pay the down payment on the home up to twenty percent (20%) of the purchase price or up to $30,000 if the purchase price exceeds $150,000. The money shall be non-taxable to Wife and non-tax deductible to Husband.

(iii) Husband will pay the monthly mortgage payment on the home for a period of twelve (12) months following any subsequent permanent separation.

(iv) Except for the payments set forth above, Wife shall be solely responsible for any liens, encumbrances or expenses of this home and shall indemnify and hold Husband harmless from any liability therefrom.

## Spousal Support

Husband agreed to pay wife $2,000 per month for twelve months "following any subsequent permanent separation." Both parties waived any other claims to spousal support.

## Enforcement

16. COSTS OF ENFORCEMENT: (a) Husband and Wife agree that any costs, including, but not limited to counsel fees, Court costs, investigation fees and travel expenses, incurred by a party in the successful enforcement of any of the agreements, covenants, or provisions of this Agreement, whether through litigation or other action necessary to compel compliance herewith, shall be borne by the defaulting party.

(b) Husband and Wife further agree that any such costs incurred by a party in the successful defense to any action for enforcement of any of the agreements, covenants or provisions of this Agreement shall be borne by the party seeking to enforce compliance.

Subsequently, the parties "separated." Initially, in August 2005, they remained in the same residence. In late September 2005, they began maintaining separate residences.

Wife filed for divorce in October 2005, alleging constructive desertion. Despite the terms of the PNA, wife sought sole possession of the marital residence and temporary and permanent spousal support. Responding in February 2006, husband filed a motion to ratify and enforce the PNA. Wife replied that the PNA was unconscionable. Notably, wife later withdrew this assertion.

### Trial Court Hearing

The circuit court held an *ore tenus* hearing on October 19, 2006. The evidence revealed that after the separation, wife purchased a home worth $230,000 with a mortgage. Husband paid $30,000 towards a down payment, as called for by the agreement. Wife applied $23,000 to the down payment and also paid closing costs. Thus, her mortgage was $207,000. The monthly payment on the principal and interest alone was $1,401.56. The addition of the cost of standard and required insurance and taxes raised the monthly obligation to $1,588.49.

Wife testified she had obtained a position as an automobile salesperson at Crown Richmond BMW on June 19, 2006. In the four months between then and the date of the hearing, she had earned about $10,000, for an average monthly income of $2,500. Yet wife took unpaid vacation time in Germany for the month of August and stated she planned to take similar vacations in the future. Wife traveled to Germany for up to six weeks during the marriage. Husband presented expert testimony regarding wife's earning capacity by Peter Melberg, who works in vocational evaluation. Melberg concluded wife had employment consistent with her earning capacity. He stated wife could expect income in this job "at a minimum of $42,827 which is the median represented earnings for automotive salespersons in the Richmond area." This included all salespersons in the Richmond area, regardless of the type of car sold. Melberg

- 3 -

testified that based on wife's earnings to that date she "could earn up to" $42,827 in her first year and that as time passed wife could earn as much as $58,000.

Evidence was also taken regarding husband's income. Husband is the sole owner of Barns & Stables LLC, a company that builds barns.

Wife presented the expert testimony of Joseph Thornton, a certified public accountant, concerning husband's income. Thornton testified he considered "bank statements, personal checking account bank statements . . . business account, checking account statements . . . [and] income tax returns for the years 2004 and 2005." He further indicated he reviewed financial statements prepared internally by husband's company and credit card statements. Also relevant here is that Thornton testified a single-owner LLC such as Barns & Stables is considered for tax purposes to be husband himself. The information Thornton reviewed showed husband gave himself a salary of $78,000 per year. The company also listed personal expenses that are not deductible. Another broad category of other expenses provided $141,000 of income. In total, Thornton testified husband had about $20,000 of monthly income and about $240,000 in yearly income. An exhibit wife provided the circuit court more precisely listed the annual income at $239,544.

Husband presented expert testimony by Robert Raymond, who was also a certified public accountant. Raymond testified husband had income for child support purposes of $1,412 per month. Raymond relied upon husband's 2005 income tax return.

The circuit court issued a letter opinion on February 26, 2007. The court granted a divorce based on separation of more than one year and incorporated the parties' March 2004 PNA. The court found husband owed spousal support payments called for by the PNA. It held that where the PNA required payments for twelve months after the parties permanently separated, the permanent separation began in September 2005 when the parties ceased physically

living together.  Hence, payments were to begin in October 2005 and go until September 2006.
The court ordered husband to make payment for September 2006.  The court interpreted the PNA
to mean that while husband was only responsible for a twenty percent down payment on a
$150,000 home purchased by wife, he had liability for twelve months of mortgage payments on a
home of any value.  These mortgage payments included not only the principal and interest on the
home loan, but also insurance and taxes.  For purposes of computing child support, the court
found wife had income of $2,500 per month and husband had income of $19,962 per month.
The court stated it "accepts the testimony of Mr. Thornton and plaintiff's evidence."  Finally, the
court denied each party attorney fees and costs.  It determined that neither party "materially
breached to the extent the other should be called on to bear the applicable fees, costs, and
expenses."

These findings were incorporated into a final decree of divorce entered on June 21, 2007.
The only anomaly from the relevant portions of the letter opinion was that while the letter
opinion found permanent separation started in September 2005, the decree stated that "in August
2005 . . . [the parties] separated with the intent that their separation would be permanent."

III.  ANALYSIS

A.  Whether the Circuit Court Erred in Construing the Post-Nuptial Agreement
and Considering the Evidence Concerning Some Provisions

The parties' PNA represents a contract, and the Court construes it using the same rules
applicable to contracts.  Stroud v. Stroud, 49 Va. App. 359, 366, 641 S.E.2d 142, 145 (2007).
Contract interpretation is a matter of law receiving *de novo* review in this Court.  Fry v.
Schwarting, 4 Va. App. 173, 180, 355 S.E.2d 342, 346 (1987).

It is "the intent of the parties as expressed in the contract [that] controls."  Gayler v.
Gayler, 20 Va. App. 83, 86, 455 S.E.2d 278, 280 (1995).  We glean "'the intent of the parties and
the meaning of the language . . . from an examination of the entire instrument, giving full effect

to the words the parties actually used.'" Boedeker v. Larson, 44 Va. App. 508, 519, 605 S.E.2d 764, 769 (2004) (quoting Layne v. Henderson, 232 Va. 332, 337-38, 351 S.E.2d 18, 22 (1986)). If the contract "'is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself . . . . This is so because the writing is the repository of the final agreement of the parties.'" Harris v. Woodrum, 3 Va. App. 428, 432, 350 S.E.2d 667, 669 (1986) (quoting Berry v. Klinger, 225 Va. 201, 208, 300 S.E.2d 792, 796 (1983)).

Typically, we will "not infer covenants and promises which are not contained in the written provisions." Pellegrin v. Pellegrin, 31 Va. App. 753, 759, 525 S.E.2d 611, 614 (2000). Nevertheless, we will consider terms the contractual language necessarily requires. Id. In discerning such provisions in a contract, courts may evaluate "'the occasion which gave rise to it, the obvious design of the parties, and the object to be attained, as well as the language of the instrument itself.'" Id. (quoting Va. Ry. & Power Co. v. City of Richmond, 129 Va. 592, 611, 106 S.E. 529, 536 (1921)); see also Hall v. MacLeod, 191 Va. 665, 671, 62 S.E.2d 42, 44 (1950).

The first argument husband advances under this heading is that the circuit court erred in awarding wife spousal support for September 2006. Husband contends the PNA provides he only owed spousal support for twelve months following the parties' separation and since the evidence showed the parties separated in August 2005 and the court used this date in its final divorce decree, husband did not owe spousal support for September 2006.

The circuit court awarded spousal support based on the PNA through September 2006. In coming to this award, its letter opinion held the parties "separated in August 2005 within the home and in September 2005 began living separate and apart physically and permanently thereafter." However, the court's final divorce decree found the parties "last cohabited . . . in August of 2005, at which time they separated with the intent that their separation would be permanent."

While the decree and letter opinion may appear inconsistent at first, we read them as harmonious with each other. Cf. Va. Elec. & Power Co. v. Bd. of County Supervisors of Prince William County, 226 Va. 382, 388, 309 S.E.2d 308, 311 (1983) (stating in the statutory construction context that courts should "interpret the several parts of a statute as a consistent and harmonious whole"). We read the court's pronouncements to find that when the parties separated within the home in August 2005, they intended to permanently separate, but did not accomplish this until September 2005.

The evidence supports the court's finding. "When reviewing a trial court's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting it the benefit of any reasonable inferences." Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003). Testimony showed the parties began living separately within the home on August 5, 2005, but did not reside in separate locations until September 27, 2005. Finally, we note, the purpose of the spousal support provision in the PNA was to provide funds for wife's support when she was living on her own and in need of funds for housing, utilities, etc., not when she was residing in the same house as her husband. Under these circumstances, we cannot find the circuit court erred.

Additionally, the circuit court's award comports with the language of the agreement. The agreement provided husband would pay spousal support of "$2,000 per month for a period of twelve (12) months following any subsequent permanent separation." Since the circuit court found the permanent separation began in September 2005, the twelve months went from October 2005 to September 2006.

Husband next argues under this heading that the circuit court erred in determining his liability under the agreement on wife's new mortgage. The circuit court, in its letter opinion, held the agreement made husband responsible for mortgage payments on a home of any value. It

also held the agreement required husband to pay for taxes and insurance. The final decree incorporated this finding. By contrast, husband contends he is only responsible for payments on a $120,000 mortgage and does not have responsibility for taxes and insurance.

As noted above, the parties' agreement provided husband would "assist Wife in obtaining a home up to a value of $150,000." While it stated wife could purchase a home of greater value at her option, husband agreed to pay only twenty percent of a down payment, up to $30,000. Husband also agreed to make mortgage payments for twelve months. The clause regarding mortgage payments did not contain a monetary limitation.

We find the agreement limited husband's liability on mortgage payments to a mortgage on a $120,000 home, after a $30,000 down payment. The agreement limits husband's liability on a down payment of twenty percent of the purchase price, or at most $30,000 on a $150,000 home. Construing the agreement to, nevertheless, give husband potentially infinite liability on twelve months of mortgage payments would render this limitation virtually meaningless. This could not have been the parties' intent at the time of contracting. See Paul v. Paul, 214 Va. 651, 653, 203 S.E.2d 123, 125 (1974). In short, "'such a strained application would ignore the clearly expressed intention of the parties, would enlarge the obligations undertaken originally by [husband], and would permit a windfall to [wife]. A rule of reason applies to avoid these results.'" GEICO v. Moore, 266 Va. 155, 168, 580 S.E.2d 823, 830 (2003) (quoting Transit Cas. Co. v. Hartman's, Inc., 218 Va. 703, 709, 239 S.E.2d 894, 897 (1978)). Accordingly, we hold the trial court erred, and husband's liability for interest and principal payments is limited to that portion of such payments as would be attributable to a $120,000 mortgage loan.

On the other hand, we hold the circuit court acted correctly by including taxes and insurance within husband's liability for mortgage payments. While we know of no dispositive Virginia case law on this point, directly on point is Cherry v. Cherry, 422 So. 2d 784 (Ala. Civ.

App. 1982). Like this case, the trial court there held mortgage payments included taxes and insurance. Id. at 786. The court noted the evidence revealed taxes and insurance had previously been included with the mortgage payment. Id. It, therefore, held that while "the decree does not specifically include the insurance and taxes within the mortgage payments, the surrounding circumstances indicate that it was the intention of the parties that the insurance and taxes should be included." Id. In this case, the evidence also showed wife's mortgage payment necessarily included insurance and taxes. We are persuaded by the Cherry court's reasoning that this demonstrates the parties intended the term "mortgage payment" in their agreement to include taxes and insurance. Of course, while husband has liability for twelve months of taxes and insurance as part of his mortgage obligation, pursuant to our holding above he only has responsibility for that portion of taxes and insurance attributable to a $150,000 property.

### B. Whether the Circuit Court Erred in Declining to Award Attorney Fees and Costs Pursuant to the Parties' Agreement

Parties may enter into contracts governing an award of attorney fees resulting from litigation. Ulloa v. QSP, Inc., 271 Va. 72, 81, 624 S.E.2d 43, 49 (2006). The Code provides that in divorce cases where the parties have a binding agreement, "no decree or order directing the payment of . . . counsel fee . . . shall be entered except in accordance with that stipulation or contract." Code § 20-109(C). Courts must enforce contractual provisions for attorney fees in the same manner as any other terms. Rutledge v. Rutledge, 45 Va. App. 56, 62, 608 S.E.2d 504, 507 (2005).

The parties' agreement contained terms concerning attorney fees and costs, as quoted above. The agreement stated that where a party initiates a "successful enforcement" of the agreement, the "defaulting party" must bear the other's costs. Similarly, where a party successfully resists enforcement, the party seeking enforcement incurs the defender's costs.

The circuit court denied attorney fees and costs. The court stated there existed "many places in the Agreement where the parties agree to agree. There are others where the terms of a particular provision are broad and general . . . that the parties' meaning is not readily discernible except by construction." Given these facts, the court held neither party would receive fees or costs.

Husband raises a number of arguments against the court's decision, claiming wife repeatedly breached the agreement. He claims wife breached the agreement by (1) filing for divorce without mentioning the agreement; (2) attempting to set aside the agreement; (3) forcing husband to defend against allegations of abuse and desertion made in the complaint; (4) attempting to hold husband in contempt regarding the acquisition of her car; and (5) complaining about husband's lack of insurance under the agreement while not complying with her own insurance obligations.

We have addressed language similar to the instant fee provision in the past. In Pellegrin, 31 Va. App. at 768, 525 S.E.2d at 618, the agreement stated that fees "incurred by a party in the successful enforcement of any of the provisions . . . shall be borne by the defaulting party." We held successfully defending a motion to terminate spousal support and a rule to show cause proceeding in enforcing the agreement fell within these terms. Id. at 767-68, 525 S.E.2d at 618. In O'Hara v. O'Hara, 45 Va. App. 788, 799, 613 S.E.2d 859, 865 (2005), we held an agreement permitting fees "in the event that either party defaults in the performance" of the agreement did not apply to a motion to adjust spousal support as this did not represent a default. On the other hand, we determined that where the agreement stated "the defaulting party" must pay fees to the party "successfully enforcing the agreement," this encompassed a motion to enforce support payments following a lapse in payment. Sanford v. Sanford, 19 Va. App. 241, 249-50, 450 S.E.2d 185, 190 (1994).

We conclude husband should receive attorney fees and costs under the agreement for those expenses incurred as a result of husband's efforts to enforce the PNA with respect to wife's (1) filing for divorce without mentioning the agreement and (2) attempting to set aside the agreement. First, wife's complaint sought relief prohibited by the PNA. She asked for exclusive possession of the marital home, even though the agreement stated wife must vacate the home after locating an alternative residence. She sought temporary and permanent spousal support in an indeterminate amount. Second, when wife denied the validity of the PNA, she plainly put husband in the position of having to defend that challenge and seek enforcement of the PNA, and its inclusion in the final decree of divorce.

We affirm the trial court's decision to deny attorney fees and costs for husband's other three claims, as they were not related to his efforts to enforce the PNA.

### C. Whether the Circuit Court Erred in Calculating Child Support

Finally, husband argues the circuit court erred in determining the level of child support. He contends the court erred in failing to impute income to wife. Husband concedes wife is not underemployed, but argues the limited duration of wife's employment at the time of the hearing before the circuit court did not reflect her true earning potential. Husband submits expert testimony showed her earning potential to be much higher than the figure determined by the circuit court. Husband further contends wife's decision to take unpaid vacations distorts her true earning potential. He also maintains the court erred in fixing husband's income at the level provided by wife's expert when the evidence indicated a much lower income.

We first consider whether the circuit court should have imputed income to wife. In considering this issue, a court should "look to current circumstances and what the circumstances will be 'within the immediate or reasonably foreseeable future,' not to what may happen in the future." Srinivasan v. Srinivasan, 10 Va. App. 728, 735, 396 S.E.2d 675, 679 (1990) (citing

Young v. Young, 3 Va. App. 80, 81-82, 348 S.E.2d 46, 47 (1986)). The party requesting imputation bears the burden of proof. Blackburn v. Michael, 30 Va. App. 95, 102, 515 S.E.2d 780, 784 (1999). "The evidence must only enable the trial judge reasonably to project what amount could be anticipated." Hur v. Va. Dep't of Soc. Servs. Div. of Child Support ex rel. Klopp, 13 Va. App. 54, 61, 409 S.E.2d 454, 459 (1991). Factors for a court to consider include a party's "earning capacity, financial resources, education and training, ability to secure education and training, and other factors relevant to the equities" of the spouses. Joynes v. Payne, 36 Va. App. 401, 421, 551 S.E.2d 10, 19 (2001). The decision on whether to impute income "is within the trial judge's discretion." Sargent v. Sargent, 20 Va. App. 694, 704, 460 S.E.2d 596, 601 (1995). This Court limits its review "to determining whether the trial court clearly abused its discretion." Miller v. Cox, 44 Va. App. 674, 679, 607 S.E.2d 126, 128 (2005).

Husband offered expert testimony of wife's earning capacity by Peter Melberg. He testified wife had an earning capacity "at a minimum of $42,827 which is the median represented earnings for automotive salespersons in the Richmond area." He further stated wife "could earn up to that" in her first year. As wife gained experience, Melberg testified she could earn "$58,000 or greater." On cross-examination, Melberg testified his information regarding automobile sales earnings was based upon an examination of all dealerships together rather than only BMW dealerships such as where wife worked.

We find the circuit court acted within it discretion in declining to credit Melberg's testimony. Although Melberg testified wife's minimum earning capacity was $42,827, he contradicted this testimony in the same sentence by stating this was the median income of salespersons in the Richmond area. Thus, as he later testified, fifty percent of salespersons will fall below this level. Furthermore, Melberg's testimony that wife "could earn up to" $42,827 in her first year seems to indicate this was less than certain in the near term. Yet as noted above,

- 12 -

consideration of what may happen eventually is inappropriate. <u>Srinivasan</u>, 10 Va. App. at 735, 396 S.E.2d at 679. Finally, the fact that the data Melberg used as the basis for his testimony came from all automobile dealerships in the Richmond area, rather than only dealerships similar to where wife worked, makes his testimony of limited relevance.

Wife testified that, over the four-month period she was employed at Crown Richmond BMW (as of the time of trial), she earned around $10,000, for an average monthly income of $2,500 a month for each of those four months. She also testified she was a full time employee at Crown. Finally, it is undisputed that during this four-month period wife was on a one-month unpaid vacation in Germany.

In its February 26, 2007 letter opinion, the trial court states that it "accepts the $2,500 monthly income figure as applicable to [wife] in her new position as an automobile salesperson [at Crown]," for purposes of calculating child support. The problem with this finding is that wife's gross earnings of $10,000, upon which the $2,500 per month figure is based, was earned in three months, not four. Using these facts as a basis for annualizing wife's average monthly income presupposes wife will be on vacation or otherwise without income three months out of the year. The record before us does not support such a premise, nor, indeed, does wife advocate such an analysis.

We, therefore, reverse and remand, for reconsideration, the trial court's determination of wife's average monthly income based on wife's own testimony, viewing the evidence regarding her income in the light most favorable to her.

Finally, we consider whether the circuit court erred in determining husband's income. As noted above, the circuit court accepted wife's expert testimony on this issue. Resolution of conflicting expert testimony represents a factual determination within the circuit court's discretion. <u>Frazer v. Frazer</u>, 23 Va. App. 358, 366, 477 S.E.2d 290, 293 (1996). "The trial court

has discretion to resolve conflicting expert testimony to determine an asset's value." Howell v. Howell, 31 Va. App. 332, 341, 532 S.E.2d 514, 519 (2000). We will reverse only upon a showing of plain error. Shackelford v. Shackelford, 39 Va. App. 201, 208, 571 S.E.2d 917, 920 (2002).

The child support guidelines use a party's "combined monthly gross income" in determining a support obligation. Code § 20-108.2(B); see also Rinaldi v. Dumsick, 32 Va. App. 330, 335, 528 S.E.2d 134, 137 (2000). Gross income is defined as "all income from all sources." Code § 20-108.2(C).

Wife's expert testified husband had income of about $20,000 per month and $240,000 per year. In arriving at this number, he examined several bank account statements and income tax returns for 2004 and 2005. He also reviewed financial statements prepared by husband's business for 2004 and 2005. Thornton stated the information revealed husband gave himself a regular salary of $78,000 per year. Husband's company also spent money on non-business related expenses. Another broad category of other advances also provided husband money. Combining these figures provided the $240,000 yearly income figure. An exhibit provided by wife revealed the more precise numbers of $239,544 per year and $19,962 per month. The circuit court accepted these figures in determining husband's income, and based on Thornton's testimony we cannot say it plainly erred. Nonetheless, because of our conclusion as to wife's income, we remand to the circuit court for recalculation of child support.

## IV. CONCLUSION

We affirm the circuit court's decision that spousal support under the PNA was imposed from October 2005 to September 2006. We conclude the circuit court erred in finding the PNA imposed upon husband liability on a mortgage of unlimited amount. We affirm the circuit court's decision to include taxes and insurance within husband's mortgage obligation, but note

- 14 -

husband only had such responsibility to the extent of a mortgage of $150,000. We reverse the circuit court's decision to deny attorney fees and costs in accordance with the PNA. We affirm the circuit court's decision not to impute income to wife. We reverse for reconsideration the circuit court's finding as to the amount of wife's average monthly income and therefore also remand for recalculation of child support. We affirm the circuit court's finding regarding husband's income. This cause is remanded to the trial court for further proceedings in accordance with this opinion.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded</u>.