UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Ortiz and Friedman
Argued at Fredericksburg, Virginia

ANN LARUE HARPER

MEMORANDUM OPINION[*] BY
v.        Record No. 1162-24-4        JUDGE FRANK K. FRIEDMAN
NOVEMBER 5, 2025

GEORGE D. SCHEULEN, SUBSTITUTE
 EXECUTOR OF THE ESTATE OF
 LARUE ELIZABETH HARPER, ET AL.

FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
Alfred D. Swersky, Judge Designate

Justin B. Berger (Jean Galloway Ball; Hale Ball Murphy, PLC, on
briefs), for appellant.

William D. Ashwell (Ashwell & Ashwell, PLLC, on brief), for
appellees Kelly Marino and Pam Jenkins.

Antonio R. Benedi (Walker Jones, PC, on brief), for appellee George
D. Scheulen, Substitute Executor of the Estate of LaRue Elizabeth
Harper.

No brief or argument for remaining appellees.


BACKGROUND

This appeal involves a lengthy intra-family dispute regarding the property of LaRue

Elizabeth Harper, the decedent, who died testate on April 23, 2009. LaRue had two daughters:

Ann LaRue Harper and Toni Duvall. Toni and her ex-husband, Jerry Morris, had three

daughters.[1] These granddaughters of the decedent were Pamela Jenkins, Kelly Marino, and

Caren Morris. Caren dealt with disabilities and was raised by her grandparents in her youth, and

---

[*] This opinion is not designated for publication. See Code § 17.1-413(A).

[1] Toni survived the decedent, but passed away in 2019.

she is now an incapacitated adult. The decedent was legal guardian for Caren until 2008. At that time, Jerry Morris, the decedent's former son-in-law—and Caren's father— was appointed the successor guardian of Caren. Decedent became mentally incapacitated prior to her death.

*LaRue's Properties and Her Will*

At the time of her death, decedent owned three parcels of real property in Fauquier County. The three parcels included: 1.7 acres at 4378 Ringwood Road, Nokesville, Virginia (referred to as "Parcel 1"); 1.3 acres adjacent to Parcel 1 (referred to as "Parcel 2"); and an additional 17 acres located at Ringwood Road (referred to as "Parcel 3").

In November 2004, LaRue executed a will. The terms of the will left her daughter Ann the 17 acre parcel. Ann was also named executor of LaRue's estate. Successor executors were also named, in order, as son-in-law Jerry Morris, then granddaughter Kelly Marino, and granddaughter Pamela Jenkins.

LaRue left her home (Parcel 1) and the adjacent lot (Parcel 2) to Jerry Morris on the following condition:

> This bequest is conditional on the provision that Jerry C. Morris must occupy the property within thirty days of my death and maintain this property as his primary residence caring for Caren Morris in this property. If Jerry Morris does not maintain this property as his principal residence and care for Caren Morris in this property for a minimum of three years after my death, or if he does not survive me, then I bequeath my residence and surrounding real estate of approximately 3 acres, more or less, located at 4378 Ringwood Road, Nokesville, Virginia, to Pamela R. Jenkins, per stirpes, in fee simple.

Under the will, the remainder of the estate was to be divided in equal shares between the decedent's daughters Ann and Toni.

*The 2008 Settlement Agreement*

As noted above, decedent grew mentally incapacitated before her death. In the time prior to her death, it became evident to the interested parties that "a future dispute would arise"

- 2 -

concerning the will.  In 2007, Jerry filed a petition for appointment of a guardian and conservator for decedent.  The decedent's daughter Ann, who held a power of attorney for the decedent, filed a cross-petition.  Eventually, in 2008, Jerry, Ann, Pamela, and decedent (through Ann) agreed via a written Settlement Agreement and Release "to resolve all of the matters set forth in the Suit and to resolve an anticipated dispute regarding . . . [the] Will."

Paragraph 7 of the Settlement Agreement purported to dispose of decedent's assets by creating a revocable living trust ("Trust") and conveying the three parcels of real property decedent owned ("real property") into the Trust.  Specifically, the settlement provided that Ann, as trustee:

> pursuant to this Agreement and the Court Order contemplated hereunder shall within thirty (30) days of the entry of the Court Order convey the three parcels of real property now owned by LaRue E. Harper (the "Harper Properties") to the Trustee of a revocable trust for the benefit of LaRue E. Harper (hereinafter the "Living Trust").

Further, "[a]ll costs of administration of the trust . . . shall be paid from the trust."  Clearly, the agreement contemplated that the Trust would be funded by the sale of decedent's properties.

The terms of the trust document ("Trust Agreement") designated Ann as the initial trustee and designated three other individuals to serve as successor trustees.[2]  The Settlement Agreement also purported to create a special needs trust for the care of Caren.

The special needs trust provision stated:

> Special Needs Trust.  Fifty Thousand Dollars ($50,000.00) shall be paid by or on behalf of LaRue E. Harper or her estate, by her attorney-in-fact or personal representative, for a personal support trust account ("special needs trust") maintained by The ARC of Northern Virginia ("The ARC") for the benefit of Caren Ann Morris.

---

[2] The successors were listed as Jerry Morris, Pamela Jenkins, and Kelly Marino.

At the death of Caren, the residue of the special needs trust, if any, was to be split between her sisters Kelly Marino and Pamela Jenkins.

Under the Settlement Agreement, Jerry Morris and Pamela Jenkins renounced any claims to the real property discussed in the will. Jenkins received $5,000 for her renunciation. Jerry Morris received a sum to cover legal fees in bringing the suit.[3] The trust documents associated with this settlement, the Revocable Trust Agreement, discussed how the Trust would be funded—and how the real property would be sold to fund the Trust.

The Settlement Agreement required Ann to promptly convey the three parcels of real property to the trustee of a revocable trust for the benefit of decedent. The Trust Agreement, in paragraph C, discussed the sale of the properties to fund the Trust: "Upon conveyance of title of my real property . . . to my Trustee, my Trustee within sixty (60) days *shall* list *one or more* of them *for sale* through a licensed real estate broker and under so-called multiple listing." (Emphases added). The paragraph goes on to specify, "These properties are to be sold, *as needed*, to pay the expenses of my care and to pay the obligations" of the Trust.[4] (Emphasis added).

This point was further driven home in Paragraph 6 of the Settlement Agreement, "Order of Sale":

> In light of this Agreement, the parties hereto agree that there is no need or reason for the direction contained in Para. 27 of the [power of attorney] that the real property owned by [decedent] be sold *in a particular sequence*, and the parties shall take whatever steps are

---

[3] The Settlement Agreement also contained a mutual release of claims from all parties arising out of the agreement and the will. Settlement Agreement, ¶ 15.

[4] Nothing in the Settlement Agreement or the Trust gives any direction that all three parcels be sold all at once, simply that they "be sold, as needed[.]"

necessary and appropriate to permit the sale of real property in accordance with Para. 7 . . . .

(Emphasis added).

There was evidence presented below of appraisals of the subject parcels. The appraisal of 4378 Ringwood Road (Parcel 1) came in at $375,000. And the tax value of the home is $391,600. The appraisal of Parcel 2 came in at $150,000. The appraisal of Parcel 3, by a different appraiser than the one who did Parcels 1 and 2, came in at $500,000. Taking the appraisals of Parcels 1 and 2 together, the sale of both those properties would likely fund the entire Trust. Similarly, the sale of Parcel 3 alone would likely fund the entire Trust.

The Settlement Agreement contained language calling for the trustee, upon LaRue's death, to distribute the remaining assets in the Trust in accordance with the will "subject to the terms of the Settlement Agreement and Release and all incorporated documents."

*The Trustee Ignored the Settlement Agreement and Trust upon LaRue's Death*

Ultimately, decedent died in 2009. The real estate, however, was never placed in trust. The special needs trust was not funded. Indeed, Ann did not qualify as executor of decedent's estate until June 27, 2018. Thereafter, the will was recorded, and in accordance with the bequest in the will, Parcel 3 was titled to Ann in the Fauquier County land records.

*Petition to Remove Ann as Trustee and Motion for Aid and Direction*

In August 2020, a petition was filed to remove Ann as executor of the estate; the following month she was removed by order of the Circuit Court of Fauquier County. George D. Scheulen was appointed to fill her role.[5]

Scheulen, as substitute executor, filed a petition for aid and direction and subsequently an amended petition for aid and direction asking the court for guidance as to: (1) whether he should

---

[5] There is no indication that any of the successors named in the will sought to be made the successor executor.

administer the estate of decedent in a manner to fulfill the terms of the Settlement Agreement and Trust Agreement or not, (2) whether the residence and adjacent lot (Parcels 1 and 2) come under his control by operation of the will or does the property convey to the Trust by operation of the Settlement Agreement, and (3) if he has any authority regarding the 17-acre parcel; he noted that if Ann had transferred the property to the Trust, it would have passed to multiple beneficiaries, but as a result of her not transferring the property to the Trust, it appears only she inherits the property if the will overrides the settlement terms.

*The Trial Court's Ruling*

In response to Scheulen's petition for aid and direction for guidance as to the administration of the estate, the circuit court issued a final order determining that: (1) the Settlement Agreement governs the administration of the estate; (2) Scheulen must convey all three parcels of the real property to the Trust; (3) all three parcels must be sold "and the proceeds held in the Trust"; (4) Ann failed to perform her duties under the terms of the Settlement Agreement and Trust Agreement and should not benefit from that failure; (5) Ann should be removed as trustee for the Trust and Scheulen should be appointed as her replacement;[6] and (6) the special needs trust should be funded with $180,000 from the estate instead of the $50,000 originally agreed, to compensate the special needs trust for value lost due to Ann's inaction.[7]

---

[6] Again, the election of Scheulen rather than a named successor has not been appealed, and none of the successor trustees named in the Trust sought to fill or stepped forward to assume that role.

[7] The award of this increased sum to the special needs trust has not been challenged on appeal.

The final order incorporated a letter opinion articulating the circuit court's findings.[8] Ann objected and moved for reconsideration. The circuit court denied the motion. Ann now appeals.

ANALYSIS

On appeal, Ann argues that the circuit court erred in directing the sale of all three parcels of real property because the terms of the Settlement Agreement did not require that all parcels be sold at once. She argues that the circuit court's judgment ordering the sale of the real property abrogated the terms of the will, Settlement Agreement, and Trust Agreement and amounted to an impermissible award of damages against her. She also contends that the circuit court lacked authority to remove her as trustee and to appoint Scheulen as replacement trustee.

I. The Circuit Court had Authority to Remove Ann as Trustee

Ann contends the circuit court erred when it found that she "failed to perform her duties under the Settlement Agreement and the Trust . . ." and in using this finding to remove her as trustee. Ann argues that the court's removal of her was "contrary to the terms of the Settlement Agreement which specifically names Appellant as Trustee." She further argues it was error for the court to remove her because "[t]his relief was not requested in the Amended Petition." We affirm the circuit court's decision to remove her as trustee.

Statutory interpretation presents a clear question of law, which is "subject to de novo review by this Court." *RMBS Recovery Holdings, I, LLC v. HSBC Bank USA, N.A.*, 297 Va. 327, 339 (2019) (citing *Boynton v. Kilgore*, 271 Va. 220, 227 (2006)). This Court must "seek to give

---

[8] The court's ruling also referred various issues to the Commissioner of Accounts for resolution, including but not limited to claims against the estate for Ann L. Harper's expenses, claims against Ann L. Harper for her failure to fund the special needs trust, the executor's fees, debts and expenses of the estate, and the appointment of a trustee for Caren Morris' special needs trust.

effect to the legislature's intent in enacting the statute by applying the plain meaning of the language used." *Id.*

Code § 64.2-759(A) permits a circuit court to remove a trustee "on its own initiative" where the court finds that the trustee committed a serious breach of trust, persistently failed to administer the trust effectively, or where removal best serves the interests of the beneficiaries. *See* Code § 64.2-759(B)(1), (3).[9]  The circuit court here explicitly found that appellant "failed to perform her duties under the Settlement Agreement and the Trust[.]"  The court went on to explain in its letter opinion that Ann's "failure to perform her fiduciary duties by failing to convey the properties to the trust will prevent her from benefitting from that failure."  Thus, under Code § 64.2-759, based on its findings that Ann failed to administer the Trust effectively, the court was well within its right to remove Ann as trustee "on its own initiative."

_____

[9] The Virginia Code provides:

> § 64.2-759.  Removal of trustee.
> A.  The settlor, a cotrustee, or a beneficiary, or, in the case of a charitable trust, the Attorney General . . . may be removed by the court on its own initiative.
> B.  The court may remove a trustee if:
>   1.  The trustee has committed a serious breach of trust;
>   2.  Lack of cooperation among cotrustees substantially impairs the administration of the trust;
>   3.  Because of unfitness, unwillingness, or persistent failure of the trustee to administer the trust effectively, the court determines that removal of the trustee best serves the interests of the beneficiaries; or
>   4.  There has been a substantial change of circumstances or removal is requested by all of the qualified beneficiaries, the court finds that removal of the trustee best serves the interests of all of the beneficiaries and is not inconsistent with a material purpose of the trust, and a suitable cotrustee or successor trustee is available.
> C.  Pending a final decision on a request to remove a trustee, or in lieu of or in addition to removing a trustee, the court may order such appropriate relief under subsection B of § 64.2-792 as may be necessary to protect the trust property or the interests of the beneficiaries.

We note that there are two other relevant statutory provisions which give instructions for how a circuit court may fill the resulting vacancy. For example, Code § 64.2-792 states that, in the event that a trustee is removed for a breach of trust, the circuit court may appoint "a special fiduciary" of the court's choosing to replace the trustee. *See* Code § 64.2-792(B)(5). At the same time, Code § 64.2-757 requires the circuit court to prioritize successor trustees designated in a trust document over persons chosen by the court when filling a vacancy arising from the disqualification or removal of the original trustee. *See* Code § 64.2-757(A)(4), (C). Also, Code § 64.2-757(E) further provides that "[w]hether or not a vacancy in a trusteeship exists or is required to be filled, the court may appoint *an additional* trustee or *special fiduciary* whenever the court considers the appointment necessary for the administration of the trust." (Emphases added).

These statutes were not raised by Ann to challenge the court's appointment of Scheulen (rather than a successor named in the Trust), *see* Rule 5A:18—and, in any event, none of the successor trustees listed in the trust document sought to fill Ann's position over a lengthy period of time.[10] Under the facts of this case, the circuit court plainly wanted to ensure the estate was handled properly moving forward, given the amount of time that had passed since decedent's death in 2009 and the lack of action by anyone in funding the Trust. Indeed, it was not until Scheulen was appointed trustee that any action was taken toward resolving Trust-related problems that had existed for years. In sum, we find that the circuit court's actions in this case were consistent with the requirements of Code § 64.2-759. Accordingly, we affirm the trial court's removal of Ann as trustee—and its appointment of Scheulen in her place.

---

[10] It was stated at oral argument that Jerry Morris, the successor trustee, could not be located. His daughters, also named as successor trustees, did not seek the role—and Scheulen's representation has plainly operated to their advantage. The record makes plain that Toni's descendants are fully aware of Scheulen's actions and have benefited from and acquiesced to them.

II. The Circuit Court Appropriately Resolved the Dispute Regarding Decedent's Property

A. Standard of Review

In interpreting the terms of the agreement here, "just as in construing the terms of any contract, [this Court is] not bound by the trial court's conclusions as to the construction of the disputed provisions." *Smith v. Smith*, 3 Va. App. 510, 513 (1986) (citing *Wilson v. Holyfield*, 227 Va. 184, 187 (1984)). Furthermore, this Court "defer[s] to the circuit court's factual findings and review[s] de novo its application of the law to those facts." *William H. Gordon Assocs. v. Heritage Fellowship*, 291 Va. 122, 146 (2016) (citing *PS Bus. Parks, L.P. v. Deutsch & Gilden, Inc.*, 287 Va. 410, 417 (2014)); *see also Atl. Korean Am. Presbytery v. Shalom Presbyterian Church of Wash., Inc.*, 84 Va. App. 1, 19 (2025) ("We also 'employ the de novo standard of review when analyzing a host of issues, such as statutory interpretation, the plain meaning of contracts, [and] resolution of constitutional questions[.]'" (alterations in original) (quoting *Robert & Bertha Robinson Fam., LLC v. Allen*, 295 Va. 130, 148 (2018))).

"[W]here an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself." *Berry v. Klinger*, 225 Va. 201, 208 (1983) (alteration in original). "[T]he question whether a writing is ambiguous is not one of fact but of law. . . . [W]hen the language . . . is 'clear, unambiguous, and explicit,' a court interpreting it 'should look no further than the four corners of the instrument under review." *Utsch v. Utsch*, 266 Va. 124, 129 (2003) (first and third alteration in original) (quoting *Pyramid Dev., L.L.C. v. D&J Assocs.*, 262 Va. 750, 754 (2001)). "Where language is unambiguous, it is inappropriate to resort to extrinsic evidence; an unambiguous document should be given its plain meaning." *Great Falls Hardware Co. of Reston v. S. Lakes Vill. Ctr. Assocs., Ltd. P'ship*, 238 Va. 123, 125 (1989).

B.  How Should the Property Be Divided

1.  Ann's Theory of the Case

Ann argues that the will entitles her to Parcel 3.  She then reasons that the trial court wrongly instructed the trustee to convey all properties into the Trust and sell them to fund the Trust.  She argues that the Settlement Agreement very clearly sets out that the parcels should be sold "as needed" and not in any specified or particular order.  Thus, she suggests it was appropriate for her to receive Parcel 3 under the will and leave the Trust to operate with funds from the sales of the remaining parcels.

In advancing this construction, Ann has creatively lined up the trees, but missed the forest.  The step she ignores is that she agreed unequivocally "to convey" all three parcels into the Trust.  Thus, the parcels were intended to become Trust property—and under the will and Trust language, residue proceeds are to be distributed evenly between Ann and her sister Toni's descendants.[11]  Moreover, the Settlement Agreement forecloses her from keeping Parcel 3 for herself and only delivering Parcels 1 and 2 to the Trust to fund its operation.

2.  The Circuit Court correctly Concluded all Three Parcels Must Be Conveyed to the Trust

The facts in this case are generally undisputed.  The controversy is whether the court correctly interpreted the provisions of the will, Settlement Agreement, and Trust.  The documents are not perfectly aligned, and the trial court properly heard evidence to glean intent.[12]

---

[11] Ann's arguments about the order of sale affect how the trustee may proceed in selling the property—not whether the parcels belong to the Trust.

[12] The central uncertainty is that the Settlement Agreement calls for all three parcels to be placed in the Trust, but the Trust directs the proceeds of the Trust to be distributed in accordance with the will.  The will calls for any residue to be split evenly between Ann and Toni's descendants—but the will also made specific bequests of the parcels to individuals.  This framework was further complicated by the Settlement Agreement's requirement that the parcels be placed in trust, but then used "as needed" to fund the Trust.

The circuit court via its final order required that all three parcels be conveyed to the Trust and then sold, with the proceeds held in the Trust. The court's order that the parcels be conveyed to the Trust *is clearly required by the Settlement Agreement.* "[Appellant] under the POA and pursuant to this Agreement and the Court Order contemplated hereunder shall within thirty (30) days of the entry of the Court Order convey the three parcels of real property . . . owned by [decedent] to the Trustee of a revocable trust for the benefit of [decedent]."

The will calls for "the rest and remainder of my estate to be divided between my two daughters . . . in equal shares." The Trust proceeds—whatever is left after establishment of the special needs trust, payment of costs and attorneys' fees—falls within this direction. As Scheulen notes, allowing Ann to remove Parcel 3 from the equation and keep it for herself, "would result in impermissible damage[s] against the other beneficiaries and reward [Ann] for her failure as Executor, which would result in [Ann] benefiting" from her conduct. We conclude that the trial court's resolution of this dispute is not only the appropriate way to harmonize the documents—but the fairest way to do so. Furthermore, the ruling below is fully supported by the evidence. We uphold the circuit court's judgment in resolving this complex and drawn out controversy.

CONCLUSION

For the foregoing reasons, we affirm the ruling of the circuit court.

*Affirmed.*